141 A.3d 1239

**COMMONWEALTH of Pennsylvania, Appellee**

v.

**Ryan D. SAFKA, Appellant.**

Supreme Court of Pennsylvania.

Argued Oct. 6, 2015.

Reargued April 5, 2016.

Decided July 19, 2016.

170

Robert E. Stewart, Esq., Stewart & Zinski, for Ryan D. Safka.

Keaton Carr, Esq., Michael Wayne Streily, Esq., Allegheny County District Attorney's Office, for Commonwealth of Pennsylvania.

SAYLOR, C.J., BAER, TODD, DONOHUE, DOUGHERTY, WECHT, JJ.

*OPINION*

Justice BAER.

Ryan D. Safka (Appellant) was the driver of an automobile that crashed killing three of his four passengers. The investigating police officer believed that Appellant's speed caused the accident. He, in part, relied upon data retrieved from the vehicle's Event Data Recorder (EDR) which, as fully elaborated upon herein, recorded the vehicle's speed for the five seconds prior to the airbag's deployment. In a non-jury vehicular manslaughter trial, after the evidence was closed, the trial court reopened it to permit the parties to present additional evidence concerning the reliability of the EDR data. The question presented herein is whether this was trial court error. We hold that in this non-jury proceeding, the trial court had the discretion to reopen the record *sua sponte* to receive additional testimony to avoid a miscarriage of justice, and did not abuse its discretion by doing so. In this regard, we find this case analogous to Pennsylvania's well-established rule that upon request by either party, a court may reopen the record to prevent such a miscarriage of justice. *See Commonwealth v. Baldwin,* 619 Pa. 178, 58 A.3d 754, 763 (2012) (holding that the reopening of a case after the parties have rested to take additional testimony is within the trial court's discretion, the exercise of which is couched in terms of preventing a failure or miscarriage of justice). Accordingly, the order of the Superior Court is affirmed.

At approximately 1:00 a.m. on February 22, 2011, Appellant was traveling with several teenage passengers on the Parkway West, I–376, toward downtown Pittsburgh when he lost control of his vehicle. As the car approached a bend in the road, it struck the jersey-barrier dividing the opposing lanes of traffic, careened back across its two lanes to the berm of the highway, where it struck a pile of snow that had accumulated under a guard rail, and vaulted airborne over the trees lining the roadway until it crashed on a steep hill adjacent to I–376. Appellant and one passenger survived. The other three passengers were killed.

Pennsylvania State Trooper Mark Kern, an accident reconstructionist, arrived at the scene shortly after the accident to determine its cause. Trooper Kern assessed the damage done to Appellant's vehicle and the roadway. From his calculations, he determined that Appellant's vehicle was traveling at approximately 67 miles per hour (mph) in a 50 mph zone when it hit the guardrail and left the roadway. In addition to his accident reconstruction calculations, Trooper Kern investigated whether Appellant's car was equipped with an EDR, which is a device placed in the vehicle by the manufacturer to collect and record information about the operation of the vehicle's airbags. Trooper Kern learned that Appellant's vehicle was so equipped, and that the particular EDR model recorded the vehicle's speed for the five seconds prior to airbag deployment. Using his training and past experience with EDRs, Trooper Kern extracted the EDR, determined that it was undamaged, and downloaded its information. The data from the EDR corroborated Trooper Kern's belief that speed was a factor in the accident.

Appellant was charged with two counts of homicide by vehicle, three counts of involuntary manslaughter, one count of recklessly endangering another person,[1] and several other vehicle violations, including reckless driving, disregard of traffic lane, speeding, and driving at an unsafe speed.[2] The Commonwealth's theory of the case was that Appellant lost control of his vehicle due to speed in excess of the 50 mph speed limit. Appellant waived his right to a jury trial and proceeded to a bench trial, which commenced February 6, 2012. Although the Commonwealth disclosed the EDR data in discovery, the defense did not file any pretrial motions to challenge admission of this evidence.

Notwithstanding the lack of a pretrial challenge, counsel for Appellant questioned the reliability and accuracy of the data retrieved from the EDR in his opening statement. He did not argue that the evidence was not generally accepted in

1. *See* 75 Pa.C.S. § 3732(a), 18 Pa.C.S. §§ 2504(a) and 2705.
2. *See* 75 Pa.C.S. §§ 3736(a), 3309(1), 3362, and 3361.

the scientific community as required in Pennsylvania for the admission of novel scientific evidence.[3] Rather, defense counsel focused on the lack of certification or calibration, which is generally required for, *inter alia*, other methods of testing a defendant's speed, such as a radar device, or to measure intoxication by, for example, a breathalyzer. Notes of Testimony (N.T.), 2/6/2012, at 11–12 ("It is our position, Judge, that [the EDR] is not held to the standard of other instrumentations in the Commonwealth of Pennsylvania."); *id.* at 12 ("In this case, Judge, they are looking at a box that is not certified, not calibrated. We would submit it lacks the certain reliability."). The prosecutor argued that these concerns pertained to the weight of the evidence rather than its admissibility. *Id.* at 12–13. Interpreting the defense argument as an oral motion *in limine* challenging the admissibility of the EDR data, the trial court stated that it would consider the matter and rule on it when the Commonwealth introduced the EDR evidence.[4]

Trooper Kern was qualified as an expert in the field of accident reconstruction and testified for the Commonwealth. Considering the weight of the car and the distance it traveled while airborne, other physical observations from the accident reconstruction, and his calculations of what speed would send a vehicle airborne for the distance it traveled, Trooper Kern opined that Appellant was traveling at least 67 mph when the car left the roadway.

Turning to the data he retrieved from the EDR, Trooper Kern testified that it corroborated his conclusion that Appellant was speeding. Although he was unable to explain pre-

3. The *"Frye test"* was first announced in *Frye v. United States*, 293 F. 1013 (D.C.Cir.1923), and adopted in Pennsylvania in *Commonwealth v. Topa*, 471 Pa. 223, 369 A.2d 1277 (1977). Under *Frye*, novel scientific evidence is admissible if the methodology that underlies the evidence has general acceptance in the relevant scientific community. *Grady v. Frito-Lay, Inc.*, 576 Pa. 546, 839 A.2d 1038, 1043–44 (2003).

4. Throughout the trial, the trial court's uncertainty regarding the EDR data reflects its concern both with a threshold determination of the data's admissibility, premised on *Frye*, and with its obligation as fact-finder to assign a quantum of weight to this particular piece of evidence if it was indeed admissible. These dual concerns animated the trial court's consideration of the EDR data, as apparent from the court's questions during the development of the evidence, as explained herein.

cisely how the device recorded data, Trooper Kern testified generally about how it functions and his experience downloading data from other EDRs. With regard to the data he downloaded from the EDR in Appellant's vehicle, Trooper Kern explained that it recorded Appellant's speed five seconds before the airbags deployed, which he believed was when the vehicle hit the jersey-barrier dividing the opposing lanes of traffic. This data reflected that at five seconds before deployment, the vehicle was traveling 106 mph; at four seconds before deployment, it was traveling 100 mph; at three seconds before deployment, it was traveling 94 mph; at two seconds before deployment, it was traveling 87 mph; and at one second before deployment, it was traveling 70 mph. Trooper Kern testified that this supported his opinion that Appellant lost control of his vehicle due to excessive speed. During cross-examination, defense counsel attempted to cast doubt on the reliability of data retrieved from an EDR generally. Trooper Kern testified that there is no uniformity within the automotive industry regarding the data an EDR will record, and that the EDR is not calibrated or certified for accuracy by an independent agency. The Commonwealth also presented the testimony of Appellant's surviving passenger, who stated his belief that Appellant was traveling between 70 and 80 mph in the 50 mph zone just prior to the accident.

After the Commonwealth rested its case, the trial court permitted Appellant and the prosecutor to revisit the motion *in limine*, which defense counsel characterized as a motion for judgment of acquittal. Defense counsel argued that without testing, certification, or calibration, and with a lack of uniformity among manufacturers, data derived from the EDR was not reliable and should not be admitted. The Commonwealth responded that EDRs are not meant to be certified or calibrated. Rather, an EDR is installed during a vehicle's manufacture, where it remains for the life of the automobile. The trial court denied Appellant's motion *in limine* and stated that it was the court's obligation as fact-finder to determine how much weight to give the EDR data. Appellant chose not to testify, or to present evidence.

Closing arguments proceeded on February 7, 2012, during which the trial court indicated its concern that Trooper Kern was not clear about how data was recorded onto the EDR and suggested that additional testimony about the general operation of EDRs would be helpful. The trial court explained that it was not revisiting the motion *in limine*, but was concerned with what weight the court should give to "some amorphous module that someone gathers data from." N.T., 2/7/2012, at 153. Following closing arguments, the trial court stated that it would review the matter overnight.

The next morning, February 8, 2012, the trial court indicated that it was not prepared to return a verdict due to questions raised in Appellant's motion *in limine*. Because Appellant had not filed a formal pre-trial motion or raised a *Frye* challenge, which would have permitted the court to assess the acceptability of EDR data in the scientific community,[5] the trial court explained that it was unable to resolve the admissibility, and, if admissible, the appropriate weight to afford the EDR data. N.T., 2/8/2012, at 159. Moreover, the court explained that there was no Pennsylvania precedent to guide it. Accordingly, the trial court *sua sponte* decided to reopen the record and continue the trial in two weeks for the limited purpose of providing both parties the opportunity to present expert testimony about the accuracy and reliability of information recorded by the EDR.

Trial reconvened on February 21, 2012, limited to the presentation of evidence regarding the reliability and accuracy of EDRs (hereafter, the foundational evidence). The Commonwealth called Richard Ruth as an expert.[6] Mr. Ruth explained that EDRs generally record a time-series of information immediately prior to an airbag's deployment, and were

5. *See supra,* n. 3.

6. Mr. Ruth, a retired engineer from Ford Motor Company, received specialized training in accident reconstruction through his employment at Ford, received additional training from Ford and elsewhere relative to the operation of EDRs, taught police officers and other accident reconstructionists how to read and interpret information from EDRs in the context of accident reconstruction, and has authored numerous papers regarding EDRs.

originally intended to assist manufacturers in understanding whether their airbag systems were working properly. He testified that their use in accident reconstruction has been endorsed by the National Highway Safety Transportation Administration.[7]

Turning to the facts of this case, Mr. Ruth testified that he had reviewed the data Trooper Kern retrieved from the EDR in Appellant's vehicle and opined that it was an accurate recording of Appellant's speed in the five seconds before the airbags deployed. Although Mr. Ruth agreed with Trooper Kern regarding the speed of Appellant's vehicle prior to airbag deployment, he opined that the airbags deployed not when the vehicle hit the jersey-barrier as Trooper Kern testified, but when the vehicle struck the trees after being vaulted over the guardrail.

On cross-examination, Mr. Ruth testified that although EDRs are not inspected, certified, or calibrated, there was no need for such inspection, certification, or calibration. According to Mr. Ruth, EDRs transmit data digitally, so it is either on and collecting data, or it is not functioning and not recording data. In addition, Mr. Ruth explained that the EDR is constantly recording vehicle readings for five second periods, which are continually overwritten unless the airbag is deployed. Once the airbags deploy, the last five seconds are permanently recorded.

At the conclusion of Mr. Ruth's testimony, Appellant presented no evidence. The trial court confirmed its tentative decision that the EDR data was admissible based on Mr. Ruth's testimony that this evidence is generally accepted in

7. Although the trial court indicated that it was reopening the record to receive evidence to assist it in determining how much weight to afford the EDR data, it appears that when Mr. Ruth testified, the parties and the trial court were conducting what in substance was a *Frye* hearing. The first half of Mr. Ruth's testimony detailed the extent to which EDRs are routinely relied upon in the scientific field of accident reconstruction, and the second half was specific to the EDR model installed in Appellant's car and the data it revealed. It is fair to say that at this juncture, the trial court was concerned with both admissibility pursuant to *Frye*, and with the evidence's weight, two intertwined aspects of the case due to the trial court's dual roles in this bench trial.

the relevant scientific community.[8] The parties presented argument about the weight the trial court should afford the EDR data. Following argument, the trial court found Appellant guilty of all counts and sentenced him to an aggregate sentence of 30 to 72 months' imprisonment followed by four years of probation.

Appellant appealed to the Superior Court, challenging, among other things, the trial court's decision to reopen the record after the parties had rested. According to Appellant, by reopening the record, the trial court improperly injected itself into the proceedings to permit the Commonwealth to supply additional evidence without which a not guilty verdict would have been rendered.

In its Rule 1925(a) opinion, *see* Pa.R.A.P.1925(a), the trial court explained that Appellant did not file a motion to suppress, or any other motion to prevent the Commonwealth from offering the EDR data into evidence. Rather, Appellant waited until the day of trial to make an assertion which the trial court treated as an objection to admissibility. The trial court noted that it permitted the Commonwealth to admit the EDR data and reserved consideration of the weight of the evidence. It is apparent from the trial court's Rule 1925(a) opinion that when the trial court reopened the record to assess the weight of evidence it had already admitted, it acted out of an abundance of caution in this bench trial to afford the criminal defendant the opportunity to respond to its concerns.[9]

The trial court further asserted that it had the discretion to reopen the evidentiary portion of the case at any time before it rendered the verdict. *See Baldwin*, 58 A.3d at 763 ("the reopening of a case after the parties have rested, for the taking of additional testimony, is within the trial court's discretion ...."); *Commonwealth v. Rizzi*, 402 Pa.Super. 335,

8. *See Frye, supra*, 293 F. at 1013, n. 3.

9. Our reading of the record reflects that when the trial court reopened it, questions regarding both admissibility and weight were to be again considered. We see no impropriety in the trial court's reassessment of both questions in its good faith attempt to reach the correct decision, as discussed *infra*.

586 A.2d 1380 (1991) (it was appropriate for a trial court to permit the Commonwealth to reopen the case to introduce into evidence the cocaine the defendant was charged with selling to an informant "to avoid a miscarriage of justice."). Moreover, the trial court disagreed with Appellant's assertion that the foundational EDR evidence was the difference between verdicts of guilty and not guilty.

The Superior Court affirmed the trial court.[10] Preliminarily, it recognized that although it was not disputed that the trial court has discretion to reopen the record upon a party's request, there was no case law permitting it to do so on its own initiative. *Commonwealth v. Safka,* 95 A.3d 304, 309 (Pa.Super.2014). In addressing Appellant's argument that the trial court had no discretion to open the record *sua sponte,* the Superior Court faulted Appellant for failing to confront how the timing of his objection hampered the trial court's ability to evaluate the EDR data. The Superior Court reasoned that, by failing to file a pre-trial motion, despite knowing the Commonwealth intended to rely on the EDR data, the Superior Court reasoned that Appellant forfeited his opportunity to have the trial court explore the foundational evidence necessary to determine whether EDR data is accurate, reliable, and generally accepted in the scientific community. Thus, according to the Superior Court, the trial court was left with little time to assess such questions, and, using its discretion to assess the admissibility of evidence, admitted the EDR data subject to a later determination of whether there was a sufficient foundation to establish the technology's accuracy and reliability.

The Superior Court held that the Rules of Evidence endorse such a practice. *See* Pa.R.E. 104(b) ("When the relevance of evidence depends on whether a fact exists, proof must be

10. The first issue before the Superior Court was whether the trial court erred in admitting the EDR data in violation of *Frye. See Commonwealth v. Safka,* 95 A.3d 304, 307 (Pa.Super.2014). The Court rejected the argument, holding, based on Mr. Ruth's testimony, that there was abundant support to conclude that EDR technology is not novel science. *Id.,* 95 A.2d at 308. Appellant has not appealed this determination.

introduced sufficient to support a finding that the fact does exist. The court may admit the proposed evidence on the condition that the proof be introduced later."); Pa.R.E. 104 cmt. (providing that the trial court must assess preliminary questions of admissibility and "is not bound by evidence rules, except those on privilege."); Pa.R.E. 611(a) (affording the trial court "reasonable control over the mode and order of examining witnesses and presenting evidence ... ").

Judge, now Justice, Wecht, dissented. Considering that evidence of the reliability and accuracy of the EDR went to preliminary questions of admissibility, the dissent opined that it made little sense for the trial court to hear this evidence after the evidentiary record was closed, and faulted the Commonwealth for not including this evidence during the evidentiary phase of trial. Believing the Commonwealth was bound to the evidence it introduced at trial, which he did not believe established the reliability and accuracy of the EDR, the dissent would have held that the trial court erred by reopening the case, and would have vacated the judgment of sentence.

Appellant appealed to this Court, raising one issue for our review: whether the trial court erred after the close of evidence by *sua sponte* reopening the record for the presentation of additional evidence. Appellant argues that the trial court did not have the discretion to reopen the record in this case, and that it therefore committed an error of law which requires that his judgment of sentence be vacated. Although Appellant agrees that a trial court generally has discretion to permit a party to reopen its case prior to the entry of a final judgment, he argues that there is no authority which permits a court to do so *sua sponte*. It makes no difference to Appellant's argument if the case proceeds as a bench or jury trial. In this respect, Appellant argues that the lack of a jury does not grant the court *carte blanche* authority to develop a record to its liking. According to Appellant, if the trial court was not satisfied with the Commonwealth's evidence once it rested, it should have evaluated the case based upon the evidence presented, and found Appellant not guilty.

Recognizing the lack of precedent to support his legal argument that the trial court lacked authority to reopen the record *sua sponte,* Appellant instead relies on cases from two other jurisdictions holding that a trial court cannot *sua sponte* consider adjudicating an uncharged, lesser included offense,[11] and cannot *sua sponte* reopen the record after closing arguments to take judicial notice of a fact necessary to establish an element of the crime.[12]

Confronting the Superior Court Majority's analysis, Appellant argues that neither Rule 611 nor 104 of the Pennsylvania Rules of Evidence provides the required authority for the trial court to reopen the record absent a request to do so by the parties. *See* Pa.R.E. 611, 104. Appellant further attempts to deflect responsibility from defense counsel's day-of-trial motion *in limine* by echoing the dissent's position that the burden is always on the party seeking admission of the evidence to establish its admissibility. The Commonwealth was aware of Appellant's challenge to the reliability of the EDR data yet chose not to call an expert to support it during the evidentiary phase of trial.[13] According to Appellant, this was the Commonwealth's burden, and the trial court was without authority to open the record to give the Commonwealth a further opportunity to place evidence on the record regarding the EDR. According to Appellant, the trial court improperly injected itself into the trial as an advocate for the Commonwealth. *See Commonwealth v. Elmore,* 241 Pa.Super. 470, 362 A.2d 348 (1976) (holding that in a jury trial, the trial court's aggressive questioning of a witness's identification

11. *See Ramsey v. State,* 996 A.2d 782, 785 (Del.2010) (holding, in a bench trial, that the trial judge should not consider adjudicating an uncharged, lesser-included offense unless specifically requested to do so by a party).

12. *See State v. Lovejoy,* 1996 WL 52896, at *9 (Ohio Ct.App. Feb. 8, 1996), *rev'd on other grounds,* 79 Ohio St.3d 440, 683 N.E.2d 1112 (1997) (in a bench trial on the charge of having a weapon under disability, it was error for the trial court to reopen the evidence *sua sponte* after closing arguments to take judicial notice of a prior offense to supply a crucial fact the state had failed to prove).

13. In this respect, Appellant does not acknowledge that the Commonwealth, having prevailed on admissibility at the start of trial, had no reason to support the admitted evidence with expert testimony.

"went well beyond the court's limited role and placed the court in the role of an advocate," thus requiring a reversal of the conviction).

The Commonwealth responds that the trial court had the discretion to reopen the record, and that it did not abuse this discretion when it provided both sides the opportunity to present foundational evidence regarding the reliability of EDRs. In making this argument, the Commonwealth focuses on several factors: the rules of evidence grant the trial court discretion to oversee the admission of evidence; Appellant challenged the admissibility of the evidence in an oral motion *in limine* at the commencement of trial; and a judge has more leeway with regard to the admission of evidence in a bench trial.

Like the Superior Court Majority, the Commonwealth asserts that Pennsylvania Rules of Evidence 611(a) and 104 vest the trial court with discretion to control the presentation of evidence and to reserve ruling on questions of admissibility. *See* Pa.R.E. 611, 104. Consistent with this discretion, the Commonwealth observes that the trial court is permitted a more active role in the trial than Appellant envisions, noting that it can even call and question its own expert witnesses. *See* Pa.R.E. 614(a) (providing that the trial court may, with notice to the parties, call a witness on its own or at a party's request); Pa.R.E. 706 (providing that where the court has appointed an expert witness, the court may call that witness to testify).

Moreover, the Commonwealth emphasizes that in this case, there were no written motions filed before trial to focus the court's consideration on the unique evidentiary question before trial began. According to the Commonwealth, by presenting the oral motion *in limine* at the start of trial, defense counsel put the trial court in the difficult position of evaluating the admissibility of EDR data without hearing any foundational evidence regarding this technology, which had yet to be ruled admissible by Pennsylvania appellate courts. As the trial court observed at the end of the trial, the record did not contain foundational evidence regarding the accuracy and

reliability of the EDR. The Commonwealth argues that the trial court acted properly and within its discretion to permit both parties an opportunity to supplement the record to address questions of admissibility and weight.[14]

Additionally, the Commonwealth emphasizes that Appellant was tried by a judge, not a jury. Relying on the comment to Rule 104, the Commonwealth argues that the trial court, as fact-finder, should be empowered to hear any relevant evidence to resolve questions of admissibility. *See* Pa.R.E. 104 cmt. (providing that the trial court must assess preliminary questions of admissibly and "is not bound by evidence rules, except those on privilege."). *See also Williams v. Illinois,* 567 U.S. 50, 132 S.Ct. 2221, 183 L.Ed.2d 89 (2012) (observing the presumption that when the trial court is fact-finder, it has adhered to basic rules of procedure and will ignore any inadmissible evidence when making decisions).[15]

Relying on cases which affirmed a trial court's discretion to reopen the record upon a party's motion prior to verdict, the Commonwealth argues that the trial court has inherent discre-

14. Justice Donohue, in dissent, criticizes the Commonwealth for failing to present an EDR expert in its case-in-chief, Dissenting Opinion by Justice Donohue at 199, 141 A.3d at 1257; however, the dissent ignores that the trial court admitted this evidence into the record and was deferring its ruling on how much weight to give the evidence. Moreover, the trial court was ready to decide the case in the Commonwealth's favor at the close of the evidence, *see* Trial Court Opinion at 7, which included the EDR evidence indicating that Appellant was speeding. We find the dissent's criticism of the Commonwealth for not calling an EDR expert unwarranted when it had achieved admission of the EDR, and was content to allow the trial court to assess its weight in evaluating the State's case. Indeed, it properly evaluated its case given that the trial court was ready to render a guilty verdict before deciding to give Appellant another opportunity to explore the issue.

15. The dissent by Justice Donohue views the trial judge as being in the same position as the jury, noting that a jury may not seek additional evidence following the close of evidence. Dissenting Opinion by Justice Donohue at 196, 141 A.3d at 1255–56. This is simply inaccurate. A trial judge in a bench trial serves the dual roles of judge and jury and has broad latitude over the case and the evidence. A jury could never seek to introduce evidence anytime at trial or otherwise, while the court is free to call a witness. Pa.R.E. 614(a) and 706. Jury and bench trials are simply different and we see nothing improper in the court's action allowing both parties to elaborate further on the reliability of admitted evidence.

tion to determine if additional testimony is necessary to support a just resolution. *See Commonwealth v. Chambers,* 546 Pa. 370, 685 A.2d 96, 109–10 (1996) (finding no abuse of discretion where the trial court in a jury trial permitted the Commonwealth to recall a witness to correct his prior testimony); *Commonwealth v. Tharp,* 525 Pa. 94, 575 A.2d 557, 559 (1990) (finding no abuse of discretion where the trial court during a jury trial permitted the Commonwealth to reopen its case to present additional evidence concerning an element of the crime, despite a defense motion for demurrer); *Commonwealth v. Evans,* 488 Pa. 38, 410 A.2d 1213, 1216 (1979) (finding no abuse where the trial court in a jury trial allowed the Commonwealth to reopen the record after both parties had already rested their rebuttal/surrebuttal cases).

The Commonwealth further refutes Appellant's assertion that the trial court injected itself into the case as an advocate for the prosecution. According to the Commonwealth, the trial court merely allowed for additional evidence from both sides. As the EDR data had already been admitted, the Commonwealth emphasizes that it was the defense who benefited from the trial court's decision, not the prosecution.

Finally, in response to the suggestion by Appellant and the dissenting opinion in the Superior Court that without the EDR data, the verdict would have been not guilty, the Commonwealth asserts that there was sufficient evidence for a guilty verdict in the absence of the EDR data. Specifically, both Appellant's surviving passenger and Trooper Kern testified that Appellant had been speeding prior to the collision. Indeed, the trial court specifically disagreed that the foundational EDR evidence was the difference between verdicts of guilty and not guilty. Trial Court Opinion at 7.

In reviewing the trial court's decision to reopen the record, we determine whether the trial court committed an error of law, as Appellant advocates, or abused its discretion. If we find that the trial court had the discretion to reopen the record, we would proceed to determine whether the trial court abused that discretion by doing so. *Commonwealth v. Mitch-*

*ell*, 588 Pa. 19, 902 A.2d 430, 452 (2006) (providing that the admission of evidence is within the sound discretion of the trial court, and we may reverse only upon a showing that the trial court clearly abused its discretion). As we have explained, "[w]here the discretion exercised by the trial court is challenged on appeal, the party bringing the challenge bears a heavy burden." *Paden v. Baker Concrete Const., Inc.*, 540 Pa. 409, 658 A.2d 341, 343 (1995) (quoting *Echon v. Pennsylvania Railroad Co.*, 365 Pa. 529, 76 A.2d 175, 178 (1950)). In this respect, "it is not sufficient to persuade the appellate court that it might have reached a different conclusion ..." *Id.* Rather, one must go further and show an abuse of the discretionary power. "[A]n abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will, as shown by the evidence or the record, discretion is abused." *Id.*

■ There are no Pennsylvania cases addressing whether a trial court, in a bench trial, may *sua sponte* reopen the record and provide the parties the opportunity to supplement it. Conversely, it is well-established that the trial court has discretion to permit either side to reopen the case to present additional evidence prior to the verdict, the exercise of which is directed at preventing a failure or a miscarriage of justice. *Tharp*, 575 A.2d at 558–59 ("[A] trial court has the discretion to reopen a case for either side, prior to the entry of final judgment, in order to prevent a failure or miscarriage of justice."); *Baldwin*, 58 A.3d at 763; *Chambers*, 685 A.2d at 109.

■ Moreover, the trial court in a non-jury trial has the authority to control the order and presentation of evidence. Rule 611 provides that the "[t]he court should exercise reasonable control over the mode and order of examining witnesses and presenting evidence" for three purposes:

(1) make those procedures effective for determining the truth;

(2) avoid wasting time; and

(3) protect witnesses from harassment or undue embarrassment.

Pa.R.E. 611(a).

In addition, Pennsylvania's evidentiary rules specify that trial courts make preliminary and, in due course, final decisions about the admissibility of evidence. Pa.R.E. 104(a) ("The court must decide any preliminary question about whether . . . evidence is admissible. In so deciding, the court is not bound by evidence rules, except those on privilege."). *See also Commonwealth v. Alicia,* 625 Pa. 429, 92 A.3d 753, 760 (2014) ("The admissibility of evidence is within the sound discretion of the trial court. . . ."). By providing that the trial court is not bound by evidentiary rules in determining the admissibility of evidence, except those regarding privilege, Rule 104(a) recognizes that the judge "should be empowered to hear any relevant evidence to resolve questions of admissibility." Pa.R.E. 104 cmt.

Rules 614(a) and 706 further empower the trial court to call a witness on its own. Pa.R.E. 614(a) ("Consistent with its function as an impartial arbiter, the court, with notice to the parties, may call a witness on its own or at a party's request. Each party is entitled to cross-examine the witness."); Pa. R.E. 706 (permitting the trial court to appoint an expert witness and call that witness to testify). *See also* F.R.E. 614 cmt. (providing, in the federal counterpart to Pennsylvania Rule 614, that "the authority of the judge to call witnesses is well established. . . . And the judge is not imprisoned within the case as made by the parties.").

 Additionally, we are mindful that in a bench trial, the trial court is acting in two distinct capacities: first, as the gate keeper, ruling on the admissibility of evidence; and second, as the fact-finder, affording weight to the admissible evidence. Because of the general discretion afforded to the trial court under the rules of evidence, and the trial court's dual role in a non-jury trial, we hold that trial courts have the inherent discretion to reopen the record on their own and to grant the

parties leave to supplement it with evidence regarding a particular issue, as long as neither party is prejudiced.[16] The trial court's discretion to reopen the record is not cabined by a party's request to do so. Rather, if the trial court believes that preventing a miscarriage of justice requires reopening the record, it has the discretion to do so.[17]

■ The record here is not precise regarding the trial court's actions. This is understandable. Trial courts do not have the luxury of prolonged study of the myriad evidentiary and procedural quagmires they face. Here, the trial court initially denied Appellant's untimely and undeveloped motion *in limine* to preclude evidence derived from the EDR, but indicated it would reconsider admissibility when the evidence was introduced. After considering all of the evidence in the case, and denying the motion to preclude the EDR evidence, however, the trial court decided that more testimony would assist it in ensuring its decision to admit the EDR data was correct, and to assess the weight to be afforded that data. Contrary to Appellant's protestations, the trial court never indicated that it could not reach a verdict without this evidence. Instead, it stated that it wanted to hear more evidence concerning the admissibility and the weight to be afforded the EDR data. We find no abuse of discretion in the trial court affording both parties a full opportunity to introduce foundational evidence regarding EDRs to allow the court to decide thoughtfully both the admissibility and the weight of this evidence. The trial court's actions were consistent with its

16. Justice Donohue, in dissent, would hold as a matter of law that trial judges may never exercise discretion to open the record on their own once the parties have rested. The dissent supports this conclusion by noting that the party with the burden of proof is obligated to present all relevant evidence in support of such burden. Dissenting Opinion by Justice Donohue at 197, 141 A.3d at 1256. This same concern, however, would apply prior to the parties' closing and trial courts are permitted at this stage to call witnesses, including expert witnesses, on their own, Pa.R.E. 614(a) and 706. We see no basis to preclude a court from exercising its discretion in this regard at this later stage of the proceeding.

17. Because we have resolved this issue on the basis of Pennsylvania law, we decline Appellant's invitation to review factually distinct, non-precedential decisions from other jurisdictions. *See Ramsey*, 996 A.2d at 785; *Lovejoy*, 1996 WL 52896, at *9.

gate-keeper role of determining admissibility, its fact-finder role of assessing weight, and the discretion afforded by the Rules of Evidence and our precedent in analogous situations permitting a party to move to supplement the record, as long as the opposing party is not prejudiced. *See Baldwin,* 58 A.3d at 763; *Chambers,* 685 A.2d at 109; *Tharp,* 575 A.2d at 558–59.

Moreover, we agree with the Superior Court that because of the timing of Appellant's day-of-trial oral motion, the trial court was left without sufficient information or time to resolve an unfamiliar question of law.[18, 19] *See* Tr. Ct. Op. at 8 ("The quick research the Court's law clerk was able to do during the trial led this Court to conclude that additional evidence might be necessary for the Court to properly evaluate this evidence."). Because this was a novel legal issue which the trial court lacked time to resolve pre-trial due to the timing of Appellant's request, it was within its discretion to revisit the question and provide equal opportunity for both parties to respond to its concern. By reopening the record to permit the parties to present foundational evidence regarding the reliability and accuracy of EDRs, the trial court essentially gave the parties the opportunity to do what the timing of Appellant's oral motion *in limine* precluded: present preliminary testimony about the admissibility of the EDR data. Further, the trial court's actions were especially beneficial to Appellant, who had lost his untimely and inapt oral motion *in limine* during the

18. *See* Pa.R.Crim.P. 579 (providing generally that an "omnibus pretrial motion for relief shall be filed and served within 30 days after arraignment ...").

19. The dissent by Justice Donohue questions the suggestion that Appellant's failure to file any pre-trial motion to exclude this evidence was problematic. Dissenting Opinion by Justice Donohue at 192 n. 1, 141 A.3d at 1253 n. 1. In the absence of such motion, however, the trial court admitted the evidence and reserved ruling on the weight to give it based upon whether it was shown at trial, presumably by Appellant, to be unreliable or inadmissible. It was, at least in part, Appellant's failure to attempt to exclude the evidence pre-trial through a motion *in limine, Frye* motion, or the like, that led to the trial court's struggle to determine, on its own, whether the evidence was admissible and what weight to give it.

trial and was essentially afforded a second chance to have the EDR data excluded.

■■■ We respectfully reject Appellant's position that the only proper remedy for inadequate foundational evidence was a verdict of not guilty. In *Tharp*, for example, the Commonwealth rested its case without putting in evidence that the defendant was over eighteen years of age, an element of the offense with which he was charged. 575 A.2d at 558. The defendant demurred, alleging that the Commonwealth failed to present sufficient evidence. Rather than ruling on the demurrer, the trial court permitted the Commonwealth to reopen the case to offer direct evidence of the defendant's age. On appeal, the defendant argued that trial court erred in failing to grant the demurrer and instead permitting the Commonwealth to introduce additional evidence. We rejected the defendant's argument, holding that it is within the trial court's discretion "to permit the Commonwealth to reopen its case for the purpose of meeting a demurrer interposed by the defense prior to ruling upon that motion." *Tharp*, 575 A.2d at 559. We did not hold that the trial court was instead required to grant the demurrer.

We see no meaningful distinction between the oft-cited scenario of reopening a record on a parties' motion and *sua sponte*, as discussed herein, as long as in both scenarios there is no prejudice to either party and, accordingly, justice is served. Therefore, and consistent with *Tharp*, the trial court was not constrained to reject the EDR data, but had the discretion to afford the parties equal opportunity to respond to its concerns.[20] Accordingly, we hold that the trial court possessed the discretion to reopen the record *sua sponte* in order to permit both sides an opportunity to address the court's concern about the EDR data, and that it did not abuse its discretion in this case. We affirm the order of the Superior Court.

**20.** We further question Appellant's assertion that the alternative to reopening the record was a not guilty verdict, as the trial court clearly stated that it "does not agree that the additional evidence was the difference between verdicts of not guilty and guilty." Tr. Ct. Op. at 7.

Chief Justice SAYLOR and Justice TODD join the opinion.

Justice DONOHUE files a dissenting opinion.

Justice DOUGHERTY files a dissenting opinion.

Justice WECHT did not participate in the consideration or decision of this case.

Justice DONOHUE, dissenting.

With this decision, the esteemed Majority improperly authorizes trial courts hearing criminal trials without a jury to disregard the Commonwealth's decision to rest on its evidence. In my opinion, in a non-jury criminal trial, the trial court may not, after the evidence has closed, re-open the record on its own initiative to provide the Commonwealth with a second chance at proving its case. Both due process and the Pennsylvania Rules of Criminal Procedure demand that the Commonwealth carry its heavy burden of proof during trial. The Majority here not only eviscerates this fundamental principle, but does so on a per se (and thus unreviewable) basis, as it establishes no standards or limitations on the exercise of this newfound power. For these overarching reasons, I respectfully dissent.

In the present vehicular manslaughter case, the Commonwealth had the burden beyond a reasonable doubt to prove to the trial court, as factfinder, that Appellant had been driving recklessly or with gross negligence. Absent evidence of the involvement of drugs or alcohol, the Commonwealth sought to prove that the accident occurred because Appellant was driving at a reckless or grossly negligent speed well in excess of the posted limit of 50 miles per hour (mph). The Commonwealth's evidence as to speed primarily consisted of testimony from Pennsylvania State Trooper Mark Kern, an accident reconstructionist. Trooper Kern offered two kinds of testimony at trial. First, he offered testimony based on his assessment of the damage done to Appellant's vehicle and the road surface shortly after the accident (the "non-EDR evidence"). Second, he testified about data he extracted from the car's Event Data Recorder ("EDR").

Regarding the non-EDR evidence, Trooper Kern testified that "[b]ased upon the tire marks alone," he "estimated . . . a minimum speed of 49 miles an hour needed to produce that set of tire marks at that distance." N.T., 2/6/2012, at 63. Later, he clarified that "[t]he speed I gave you on those numbers, the 49 [mph] to 60 [mph] that we spoke about from the tire marks, is the distance from the concrete median—the speed from the median to—the jersey barrier to the guardrail area." *Id.* at 87. He further testified that the "minimum speed at the exit point of that guardrail was approximately 67[mph]." *Id.* at 62.

In significant contrast, Trooper Kern testified that the EDR data showed that the car was moving at a speed of 106 mph at five seconds before the airbags deployed and decreased incrementally down to 70 mph at one second before the airbags deployed. *Id.* at 71. The trial court allowed Trooper Kern to testify about the EDR data despite defense counsel's oral motion in limine at the start of trial arguing for the exclusion of the EDR data because it lacked any indicia of reliability, including the lack of certification or calibration as required for radar devices and breathalyzers. *Id.* at 12. In response to the motion in limine, the trial court explained that it would rule on the EDR data's admissibility and/or weight "in the normal course of when it comes in." *Id.* During Trooper Kern's testimony, it became immediately apparent that he could neither authenticate the EDR evidence nor offer any basis to establish its reliability. Trooper Kern indicated that while he knew how to download EDR data, he could not explain how EDR modules work from a technical standpoint, either generally or in specific circumstances like the one at issue here. *Id.* at 94 ("All I know is . . . I know there has to be a deployment event for it to be activated in most cases and under certain circumstances it is able to capture specific data. And then I know how to download that information into a printable report."). Trooper Kern further testified that, to his understanding, there is no uniformity within the automotive industry regarding how much data is recorded by an EDR, and that EDR devices are not calibrated or certified for accuracy by any independent agency. *Id.* at 67, 89–90, 95–96.[1]

Nevertheless, following the Commonwealth's case-in-chief, the trial court initially stated it would deny Appellant's motion in limine, and "would consider the [EDR] evidence admissible," noting its obligation as factfinder to "determine what weight to give it."[2] N.T., 2/7/2012, at 139. During closing arguments, however, defense counsel again argued that the EDR data was unreliable and, in response, the trial court began to backtrack on its admissibility ruling, asking the Commonwealth:

Don't we need to have a baseline here for someone, perhaps from Chrysler Motors, to come in and say, this is what the [EDR] module is, this is how it works, this is how it gathers the data? He just gathered the data.

*Id.* at 152. Even more directly, the trial court asked the Commonwealth, "How do we know this [EDR] data is accurate?," *id.* at 153, and openly questioned whether the non-EDR evidence alone (which, unlike the EDR device, did not establish a top speed far in excess of the posted speed limit) was sufficient to prove Appellant's recklessness or gross negligence:

1. The Majority insists that Appellant should have filed a pre-trial challenge to the accuracy and reliability of the EDR evidence, and that Appellant's failure to do so led to the trial court's "struggle to determine, on its own," whether to admit the EDR evidence. Majority Op. at 173–74, 188 n. 19, 141 A.3d at 1241, 1250 n. 19. It is beyond cavil, however, that at trial the party seeking the introduction of evidence must, absent a pre-trial stipulation, lay a proper foundation for its admission. *See, e.g., Commonwealth v. Edwards*, 588 Pa. 151, 903 A.2d 1139, 1155–57 (2006). In this case, it was the Commonwealth's failure to provide evidentiary support for the introduction of the EDR data that lead to the trial court's "struggle" over admissibility.

 Any notion that a party must put opposing counsel on notice of its obligation to lay a foundation for its evidence is unfathomable to me. The Commonwealth knew, or certainly should have known, of its obligation to proffer the necessary evidence to provide a sufficient foundation for introduction of its EDR evidence, regardless of whether or not the Appellant affirmatively challenged its introduction pre-trial.

2. At this point, the trial court noted that it would treat Appellant's motion in limine as a motion for judgment of acquittal and denied that motion as well. N.T., 2/7/2012, at 139.

If the [c]ourt were to agree with [defense counsel] that the [EDR] module is not sufficiently reliable, then we would have to go back to the other issue of the speed.... And the problem there is that the accident reconstruction expert said a minimum speed of 49 miles an hour, which is still below the speed limit.... Where does the court gather a speed from the evidence absent the [EDR] module?

*Id.* at 156.[3]

After closing arguments, the trial court indicated that it was taking the case under advisement and would render a verdict the next morning. *Id.* at 158. The next morning, however, the trial court explained that it was not prepared to return a verdict because it had doubts related to the admissibility of the EDR data, as raised in Appellant's motion in limine. *See id.* at 159. The court noted that "the sole issue upon which this case rested is one of speed and what constitutes recklessness or gross negligence." *Id.* at 160–61. It added that "the case law ... requires that the Commonwealth set forth evidence of recklessness or gross negligence," and that the Commonwealth relied upon the EDR evidence purportedly establishing that the car's speed reached between 70 and 106 mph to satisfy its burden. *Id.* "We presume, because there is no testimony [in] that regard" that the EDR "records data from the vehicle." *Id.* Referring to its own legal research, the trial court noted it found "no Pennsylvania case law which permits" the use of the EDR data. *Id.* at 163. As such, it concluded that "there is no precedent for introducing" the evidence indicating speeds up to 106 mph. *Id.*

Finally, effectively reversing its prior decision to consider what weight to give to the evidence, the trial court ruled that the Commonwealth had not authenticated the EDR evidence. Specifically, the trial court emphasized that "ultimately, where we are here is that were a jury in the box, I would not at this

3. The Commonwealth also introduced non-EDR evidence in the form of testimony from Brendon Johnson, Appellant's front seat passenger the night of the crash. Based upon the significance it placed on the EDR data, the trial court clearly placed little or no weight on Johnson's testimony, perhaps because he did not have a driver's license and had never driven a car. *Id.* at 124.

point have permitted the Commonwealth to introduce the evidence of the event data recorder. . . . But the problem I have is now as the judge of the law how do I tell the judge as the fact finder how to consider it. And I do not believe that I have sufficient data on the record to do that." *Id.* at 164.

Rather than entering a judgment of acquittal in favor of Appellant, the court instead announced that it would sua sponte re-open the evidentiary record for additional testimony regarding the reliability of the EDR data.[4] *Id.* On February 14, 2012, Appellant filed a petition for habeas corpus and entry of verdict (the "Habeas Petition"), in which he again challenged the admissibility of the EDR evidence given the Commonwealth's failure to introduce any foundational evidence in support of its reliability. Habeas Petition, 2/14/2012, ¶¶ 2–8. Appellant objected to the re-opening of the record on constitutional grounds, argued that the Commonwealth had not proven its case with regard to recklessness at the time it rested, and demanded entry of a verdict without re-opening the record. *Id.* ¶¶ 9–13, Wherefore Clause.

At the resumption of the trial on February 21, 2012, the trial court denied Appellant's Habeas Petition. N.T., 2/21/2012, at 169. Following testimony by Richard Ruth, an EDR expert for the Commonwealth, the trial court found Appellant guilty as to all counts charged. N.T., 2/21/2012, at 233. Summarizing the non-EDR testimony, the court noted that "[v]irtually none of that testimony would evidence criminality." *Id.* at 231. The court continued:

4. With due deference to the Majority, its contention that "the trial court was ready to render a guilty verdict before deciding to give Appellant another opportunity to explore the issue" is entirely without support in the record. Majority Op. at 183 n. 14, 141 A.3d at 1247 n. 14. To the contrary, as set forth herein, the record plainly reflects that the trial court was far from "ready to render a guilty verdict," as it considered the EDR evidence to be dispositive of Appellant's criminal liability and it lacked "sufficient data on the record" to admit that evidence. N.T., 2/7/2012, at 164 ("were a jury in the box, I would not at this point have permitted the Commonwealth to introduce the evidence of the event data recorder"). Any reasonable review of the certified record reflects that the trial court re-opened the evidentiary record for the benefit of the Commonwealth (to meet its burden of proof), and not, as the Majority claims, for the benefit of Appellant.

Speeding alone may be negligence. It is only when speed reaches a certain point that one can say that it encompasses criminal liability. Relying on the event data recorder, however, gives us a speed of 106 miles per hour five seconds before the airbag deployment with no braking.... [The] [c]ourt finds [-] from the event data recorder [-] admissible, sufficient and compelling scientific evidence upon which the fact finder can rely in determining a verdict. The [c]ourt further finds that, relying upon the evidence of the event data recorder, the Commonwealth has proven the elements of the offenses beyond a reasonable doubt.

*Id.* at 231–32.

The United States Supreme Court has articulated the government's burden in a criminal case in the most certain terms. Due process demands that the government fulfill an affirmative duty to persuade the factfinder of the defendant's guilt:

There is always in litigation a margin of error, representing error in fact-finding, which both parties must take into account. Where one party has at stake an interest of transcending value—as a criminal defendant his liberty—this margin of error is reduced as to him by the process of placing on the other party **the burden of persuading the factfinder at the conclusion of the trial of his guilt beyond a reasonable doubt.** Due process commands that no man shall lose his liberty **unless the Government has borne the burden of convincing the factfinder of his guilt.** To this end, the reasonable-doubt standard is indispensable, for it impresses on the trier of fact the necessity of reaching a subjective state of certitude of the facts in issue.

*In re Winship,* 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970) (internal citations and quotations omitted) (emphasis added).

This Court has reinforced the directive with indistinguishable vigor:

It is beyond cavil that an accused in a criminal case is clothed with a presumption of innocence and that the bur-

den of proof in establishing guilt rests with the Commonwealth. The quantum of proof necessary to satisfy this burden, which never shifts from the Commonwealth to the accused, is such that the fact-finder must be convinced beyond a reasonable doubt of the defendant's guilt. We have often stated that this identical burden extends to every material element of the crime charged and that **if the Commonwealth fails to carry this burden beyond a reasonable doubt as to any one element, the accused must be acquitted.**

*Commonwealth v. Bishop,* 472 Pa. 485, 372 A.2d 794, 796 (1977) (internal citations omitted) (emphasis added).

Moreover, our Rules of Criminal Procedure require that the Commonwealth must carry its burden of proof in its case-in-chief and at the close of all the evidence. Rules 606(A)(1) and (2) of the Pennsylvania Rules of Criminal Procedure provide that a criminal defendant may challenge the sufficiency of the evidence either "at the close of the Commonwealth's case-in-chief" or "at the close of all the evidence." Pa.R.Crim.P. 606(A)(1)–(2). At either of these two stages of trial, a criminal defendant may file a motion for judgment of acquittal, which must be granted if the Commonwealth has not introduced sufficient evidence to prove the elements of the charged offenses beyond a reasonable doubt. *See generally Smalis v. Pennsylvania,* 476 U.S. 140, 141, 106 S.Ct. 1745, 90 L.Ed.2d 116 (1986) (holding that, at a bench trial, the trial court's grant of a demurrer of acquittal at the close of the Commonwealth's case-in-chief, based upon the insufficiency of the evidence presented, was final and not subject to appeal, as reversal could result in further proceedings "devoted to the resolution of factual issues going to the elements of the offense charged") (quoting *United States v. Martin Linen Supply Co.,* 430 U.S. 564, 570, 97 S.Ct. 1349, 51 L.Ed.2d 642 (1977)).

In this case, when the parties rested, the trial court, by its own admission, lacked a sufficient basis to permit the introduction of the EDR evidence which, also by the trial court's own admission, was the sole basis upon which it later reached its finding of criminal recklessness/negligence beyond a rea-

sonable doubt. Nevertheless, the trial court denied Appellant's Habeas Petition and instead re-opened the record to admit additional evidence—upon which it then exclusively relied to find Appellant guilty. This represents an error of law. The trial court had no discretion to sua sponte supplement the record at this stage.

Until now, a criminal defendant's waiver of his right to a jury trial did not constitute the surrender of his right to an impartial factfinder. The bench trial defendant merely agreed to have the trial court play two roles—its traditional judicial role of deciding evidentiary issues and the jury's traditional role as neutral factfinder. *See Commonwealth v. Quarles*, 310 Pa.Super. 74, 456 A.2d 188, 191 (1983) (explaining that, in waiving a jury trial, "[a]ppellant merely relinquished his right to have a jury as a factfinder as opposed to a judge"). At the close of the evidence, the bench trial judge's role as evidentiary gatekeeper expires, just as it would during a jury trial. *See Commonwealth v. Henderson*, 450 Pa. 122, 298 A.2d 891, 892 (1973) ("The trial judge, as the trier of fact, is [b]ound by the same legal principles that bind a jury on burden of proof."). From that point forward, the trial judge serves only as the substitute factfinder, weighing the evidence and assessing the credibility of witnesses. Because it is beyond peradventure that a jury is not entitled to request additional evidence during deliberations, a bench trial judge must clearly lack this power as well. *See Quarles*, 456 A.2d at 191 ("The requirement that the Commonwealth convince the factfinder that a defendant is guilty beyond a reasonable doubt is not unique to a jury trial; this is the identical burden of proof that is applied in a bench trial.").

The Majority's outcome in this case is necessarily premised on an unstated assumption that a criminal defendant who waives his right to a jury trial also necessarily waives any requirement that the Commonwealth prove its case against him beyond a reasonable doubt by the close of the evidence. Today's ruling calls into serious question the continued viability of Rule 606(A) of our Rules of Criminal Procedure, since in response to any motion for judgment of acquittal based upon

the insufficiency of the Commonwealth's evidence, the trial court, rather than grant the motion, may instead sua sponte re-open the record to provide the Commonwealth with a second bite at the proverbial apple. Moreover, because (as discussed infra) the Court places no standards on the trial court's apparently unlimited power to re-open the record to assist the Commonwealth in its efforts to satisfy its evidentiary burden, presumably the record could be re-opened on multiple occasions as the trial court, in its sole (and unreviewable) discretion, determines to be necessary to secure a conviction.

The Majority claims to derive support for its holding from "Pennsylvania's well-established rule that, upon request **by a party,** a court may re-open the record to prevent" a miscarriage of justice, characterizing the instant case as "analogous" to this rule. *See* Majority Op. at 172, 141 A.3d at 1240–41 (citing *Commonwealth v. Baldwin,* 619 Pa. 178, 58 A.3d 754, 763 (2012)) (emphasis added); *see also Commonwealth v. Tharp,* 525 Pa. 94, 575 A.2d 557, 559 (1990) (granting the motion of a party to re-open the record). Where the Majority perceives an analogy, I observe a patent distinction. Unlike the Majority's holding, *Baldwin's* rule preserves the constitutional mandate that the Commonwealth is responsible for proving its case. *Baldwin,* 58 A.3d at 760. *Baldwin* is premised on the notion that a party, **as an advocate,** has determined that it may not prevail without introducing additional evidence, and has therefore requested that an exception be made to "the rule generally limiting testimony to the evidence-taking stage of a trial." *Id.* at 760–61, 764.[5] This rationale neither suggests, nor is even consistent with, the notion that a trial court, in its role as an impartial factfinder (and thus plainly not an advocate for either side), may re-open the record to take additional evidence.

**5.** In *Baldwin,* we affirmed the Superior Court's holding that the trial court did not abuse its discretion in refusing to re-open the record to allow the defendant to testify, where defendant had voluntarily waived his right to testify and provided no excuse for his change of tack. *Baldwin,* 58 A.3d at 760–64.

As reviewed hereinabove, the trial court here repeatedly indicated, at various times during the trial, that it questioned the reliability of the EDR evidence and the Commonwealth's failure to authenticate it. The Commonwealth, however, persisted in its decision not to introduce any testimony regarding its accuracy (even though the EDR data identified a speed nearly 40 mph greater than Trooper Kern's non-EDR evidence). Nor did the Commonwealth make a motion to the court to re-open the record following closing arguments, even though the trial court again signaled during closing arguments its discomfort with the Commonwealth's lack of foundation for the introduction of the EDR evidence. Instead, the trial court, on its own accord, announced it would re-open the record after the parties had rested and closed. N.T., 2/7/2012, at 152–56. As even the Majority acknowledges, there is no discussion, either in *Baldwin* or elsewhere in current Pennsylvania jurisprudence, condoning the decision of a trial court to re-open the evidentiary record sua sponte. *See* Majority Op. at 185, 141 A.3d at 1248–49. *Baldwin* is simply not on point.

It bears emphasizing that, in *Baldwin,* this Court affirmed the application of a multi-factor standard of review to determine whether a trial court abused its discretion in deciding whether or not to re-open a record. *See Baldwin,* 58 A.3d at 763–64 (noting that the "same factors apply to either party making the request"). In determining whether "re-opening the case is necessary to prevent a miscarriage of justice," this Court in *Baldwin* indicated that the trial court should consider, inter alia, the following factors: the timing of the request to re-open; the nature of the proffered testimony; the reason for the party's failure to present such evidence during its case-in-chief; the relative weight of the proffered testimony against the potential for disruption or prejudice; and reasonableness of the party's excuse for failing to present such evidence sooner. *Id.* at 763–64. Although, for the reasons previously set forth, I disagree with the Majority's reliance on *Baldwin* as support for the authority of a non-jury trial judge to sua sponte re-open the evidentiary record, if *Baldwin* is to be our guide, so too should its multi-factor analysis.

The Majority relies on *Baldwin* but fails to apply it and does not require that a non-jury trial court consider its factors when it sua sponte opens the record to take further evidence. If applied, the *Baldwin* factors strongly weigh **against** re-opening the record in this case. Given its clear evidentiary obligations, as well as the trial court's numerous comments regarding the lack of foundation for the introduction of the EDR evidence, the Commonwealth had no excuse for failing to present the testimony of an EDR expert during its case-in-chief. Nor did the Commonwealth present a motion asking to re-open the record when the trial court made clear its lack of confidence in the Commonwealth's EDR evidence during closing arguments. The Commonwealth plainly made a decision to stand on its proof. The prejudice to Appellant was palpable, as it resulted in his conviction rather than his acquittal.

Perhaps most distressingly, the Majority gives no indication as to what "miscarriage of justice" it believes the trial court prevented in this case. I can only surmise that the Majority did not articulate the "miscarriage of justice" prevented here because it is not possible to identify one. Absence of conviction is not a "miscarriage of justice," but merely the consequence of the Commonwealth's failure to meet its burden of proof of a defendant's guilt beyond a reasonable doubt. By failing to apply the *Baldwin* multi-factor test, or to otherwise establish any limitations whatsoever on the non-jury trial court's authority to re-open an evidentiary record, the result of today's decision is that a trial court's ability to do so, sua sponte at its unfettered discretion, is both unrestrained and not subject to appellate review. While the Majority states that a trial court does not abuse its discretion if it "believes that preventing a miscarriage of justice requires re-opening the record," Majority Op. at 187, 141 A.3d at 1250, in the absence of a *Baldwin* multi-factor type analysis, no basis exists for appellate review of the exercise of discretion. Certainly no such basis exists for determining whether the trial court abused its discretion in this case, as the Majority has not even identified the miscarriage of justice allegedly prevented

here, much less applied the *Baldwin* multi-factor test intended to guide the trial court's decision.

It is manifestly clear from the trial transcript that before the trial court re-opened the record for additional testimony about the EDR data, it did not believe the EDR data was admissible. N.T., 2/7/2012, at 164. The trial court also admitted that the non-EDR evidence was insufficient to convict Appellant. *Id.* at 231 (acknowledging that "[v]irtually none of [the non-EDR] testimony would evidence criminality"). It is also clear from the record, following additional testimony from the Commonwealth's EDR expert, that the trial court **only then** found "the EDR admissible, sufficient and compelling scientific evidence upon which the fact finder can rely in determining a verdict," and that "relying upon the evidence of the EDR, the Commonwealth has proven the elements of the offenses beyond a reasonable doubt." *Id.* The trial court's subsequent assertion in its 1925(a) opinion that it does "not agree that the additional evidence was the difference between verdicts of not guilty and guilty" is entirely contradicted by the trial court's numerous comments on the record.[6] Trial Court Opinion, 12/27/12, at 7. I would therefore hold that, even pursuant to *Baldwin*, the Majority's holding is unsupported.

Finally, the Majority cites Pennsylvania Rules of Evidence 611(a) and 104 to establish that a judge in a non-jury trial has the authority to control the order and presentation of evidence and "should be empowered to hear any relevant evidence to resolve questions of admissibility." Majority Op. at 186, 141 A.3d at 1249. The Majority also points to Rules 614(a) and 706 to establish that the trial court is empowered "to call a witness on its own" and "appoint an expert witness and call that witness to testify."[7] *See* Majority Op. at 186, 141 A.3d at

---

**6.** Notably, during post-trial proceedings, counsel for Appellant questioned the court as to whether "[t]he evidence contained in the [EDR] and its admission played a critical role in the [c]ourt's decision." The trial court responded, "That would be correct. I even said that." N.T., 6/26/2012, at 9.

**7.** By way of clarification, Rule 706 does not actually affect the scope of the trial court's power to appoint experts; it "provides only the proce-

1249. True enough. But there is simply no support for the Majority's conclusion, based on these rules, that "the trial court's discretion to re-open the record is not cabined by a party's request to do so," nor limited to the evidence-taking phase of a trial, which ends when the parties rest. *Id.*

In summary, I believe it is error to confer authority upon a trial court to re-open the evidentiary record sua sponte. Accordingly, I would reverse the decision of the Superior Court, vacate the judgment of sentence, vacate the trial court's denial of Appellant's Habeas Petition, and remand for the trial court to enter a verdict based on the evidence of record at the time the Habeas Petition was filed—after the parties rested and before the evidentiary record was improperly re-opened. On remand, I would trust the trial court to candidly assess its record expressions of concern when the parties rested their cases respecting the lack of foundation for the EDR evidence and the insufficiency of the non-EDR evidence.

I respectfully dissent.

Justice DOUGHERTY, dissenting.

I respectfully dissent.

This appeal involves an unfortunate set of inopportune circumstances. Appellant's questioning of the event data recorder (EDR) evidence could have been the subject of a formal pre-trial *Frye* [1] motion, which would have better separated the trial court's judicial role from its role as the factfinder. In addition, the Commonwealth could have taken better charge of its case and been prepared to prove the reliability of its scientific evidence, which obviously was important to a successful prosecution. *See Grady,* 839 A.2d at 1045 (emphasizing proponent of expert scientific evidence bears burden of proof on *Frye* issue). Once trial began and the court made

dures for obtaining the testimony of experts after the court has appointed them." *See* Pa.R.E. 706, Comment.

1. *Frye v. United States,* 293 F. 1013 (D.C.Cir.1923). *See Grady v. Frito–Lay, Inc.,* 576 Pa. 546, 839 A.2d 1038, 1047 (2003) (reaffirming adherence to *Frye* rule).

plain its concern with the defense challenge to the reliability of the scientific evidence, the Commonwealth had a second opportunity to take charge of its case and could have requested a continuance, if that was necessary to carry its burden of showing the reliability of the evidence. Perhaps as a result of these decisions by the parties—as well as the serious nature of the case, with three young victims tragically losing their lives—the trial court, acting in good faith, became unusually active, going so far as to reopen the case and call for additional evidence after the parties had rested.

I am inclined to share the Majority's broad view of the trial court's discretionary authority, but only to a point—and that point has to be deemed reached once the parties rest and all that remains is the verdict. From that point in the trial continuum, I am generally aligned with Justice Donohue's dissent. Absent some extraordinary circumstance or request or agreement of the parties—none present here—the court should not reopen a case after the parties rest.

The paramount inquiry in considering this particular bench trial is the deferred evidentiary issue involved scientific evidence, which implicates *Frye*, and the Commonwealth apparently was unprepared to meet the challenge. The Commonwealth stresses the tardiness of appellant's motion *in limine*, which is true enough, but it never adequately explains its own lapse in preparing to meet that challenge, responding to the challenge once raised, seeking a continuance pre-trial, or seeking a continuance mid-trial once the trial court made plain its reservations.

The Commonwealth obviously knew the importance of the EDR data to its prosecution, and knew, or should have known, the scientific data was subject to challenge, yet the Commonwealth apparently did nothing to prepare to prove the reliability of the data. For his part, it is true that defense counsel, who was provided the EDR data in discovery well in advance, did not challenge its admissibility until the first day of trial. *Frye* issues arise in both civil and criminal cases and in practice are generally raised before trial, with the trial court serving a gatekeeping function. Perhaps unfortunately, noth-

ing in the procedural rules prohibits counsel from withholding a *Frye* challenge in a criminal case until the day of trial, which of course can encourage gamesmanship. I hasten to add I am not suggesting there was improper gamesmanship at work here: a criminal defense lawyer's duty is to the client, the Commonwealth is responsible for its own case preparation (as well as its response to circumstances it did not foresee) and burden, and appellant's counsel did nothing improper under the existing rules structure. I merely stress the rules do not discourage this defense strategy; this case suggests *Frye* issues may be sufficiently distinct from other evidentiary issues as to warrant a more regularized pre-trial process; and, since the Court is responsible for the procedural rules, it is a matter that may warrant referral to the Committee on Rules of Evidence and the Criminal Procedural Rules Committee.

Pennsylvania Rule of Evidence 702(c), which incorporates *Frye*,[2] states only that an expert witness may testify in the form of an opinion or otherwise if his methodology is generally accepted in the relevant field. Pa.R.E. 702(c). The civil rules address *Frye* and contemplate a gatekeeping function by the trial court. *See, e.g.,* Pa.R.C.P. 207.1(a) (trial court shall initially review *Frye* motion to determine if matter should be addressed prior to trial) and (b) (party not required to raise admissibility of expert witness's testimony prior to trial unless court orders him to do so). In contrast, the Rules of Criminal Procedure do not specifically address *Frye* motions. Criminal Rules 578 and 579 generally require an omnibus pretrial motion to be served within 30 days of arraignment and a court to determine all pretrial motions before trial. Pa.R.Crim.P. 578, 579(A). However, the comment to Rule 578 distinguishes motions *in limine,* whether oral or written, challenging the admissibility of evidence, from the pretrial motions subject to these rules. Pa.R.Crim.P. 578, *cmt.* The comment then merely suggests: "The earliest feasible submissions and rulings on such motions are encouraged." *Id.*

Here, the circumstances were such that the trial court decided to consider appellant's evidentiary challenge while

**2.** *See Grady,* 839 A.2d at 1043 (*Frye* test is part of Pa.R.E. 702).

simultaneously conducting trial, which is not an unusual course for contingent evidentiary issues. And, as noted, the Commonwealth could have armed itself to meet the evidentiary challenge at trial, or requested time to prepare once the motion *in limine* was filed. But again, I suggest we have the Committees consider whether the better way, in both bench and jury trials, is to encourage a definitive resolution of *Frye* issues before a criminal trial.

Trial courts routinely face circumstances outside their control, and in some instances, the essential neutrality that ensures fair trials requires judicial passivity. In my judgment—again absent some extraordinary circumstance not present here [3] or the request or agreement of the parties—passivity is required once the parties have rested their cases. At that point in a bench trial, the court's remaining task is to issue its verdict. Thus, notwithstanding the tragic circumstances giving rise to this prosecution, where three young lives were lost, and the good faith intentions of the learned trial court, I would establish a bright-line rule providing, where the parties have resolved to present no further evidence by resting their cases, a court does not have the discretionary authority to *sua sponte* reopen the record and request additional evidence. [4]

What remains is remedy and mandate. Following the parties' summations, the trial court stated it was not prepared to return a verdict. Whatever the reason for the court's hesitation—whether the sufficiency of the evidence or uncertainty respecting the weight of the evidence—it is difficult to interpret a factfinder's hesitation in a criminal case post-resting as

3. Circumstances within the control of the advocates—such as preparing their cases, being responsible for the evidence they introduce, seeking continuances if necessary—do not qualify as extraordinary.

4. I share Justice Donohue's view that a **party's** request to present additional evidence is fundamentally different from the court reopening the record *sua sponte* to secure additional evidence respecting the Commonwealth's burden, and the trial court no doubt has discretion in the former circumstance, as this Court recognized in *Commonwealth v. Baldwin*, 619 Pa. 178, 58 A.3d 754, 763 (2012); *see also id.* at 766–67 (Saylor, J., concurring, joined by Todd, J.). When a party makes the request, the court acts within its role as an impartial arbiter; in the latter circumstance, the court risks taking on the role of a supplemental advocate.

anything but an expression of reasonable doubt.[5] There is thus something to be said for a discharge as remedy, if we were to position ourselves as the trial judge.

However, the issue accepted for review does not involve evidentiary sufficiency, or a motion for judgment of acquittal; it involves the propriety of reopening the record, and that is the juncture at trial when error occurred. Notably, appellant filed a motion after the trial court reopened the record, and before the Commonwealth presented its expert witness, petitioning for a writ of habeas corpus **and entry of verdict.**[6] The court denied relief. In my view, appellant was entitled to precisely that relief: a verdict, on the existing evidence. Accordingly, like Justice Donohue, I would reverse the judgment of the Superior Court, vacate the judgment of sentence, and remand for entry of a verdict, trusting the trial court to candidly assess its record expressions of concern respecting the sufficiency of the non-EDR evidence to prove guilt and to enter a verdict based exclusively on the admissible record evidence when the parties initially rested on February 7, 2012.

For the foregoing reasons, I respectfully dissent.

5. The Court cites the trial court's subsequent opinion stating the EDR evidence was not the difference between verdicts of guilty and not guilty. Majority Op. at 184, 141 A.3d at 1248, *citing* Trial Ct. Op. at 7. I am uncomfortable with reliance on post-trial explanations of the factfinder's internal deliberation especially where, as here, there is contemporaneous record evidence indicating the question is not so simple. *See* Dissenting Op. at 194, 141 A.3d at 1254 (Donohue, J., dissenting). For example, the record shows that, when trial reconvened following the reopening of the record, the court stated "virtually none" of the non-EDR evidence (*i.e.*, the surviving passenger's lay testimony and Trooper Kern's calculations about the speed of appellant's vehicle) "would evidence criminality." N.T. 2/21/12 at 231. The court then stated the EDR data showed a speed of 106 miles per hour and ruled the EDR data was admissible and sufficient to support guilty verdicts. *Id.* at 231–32. It appears the supplemental evidence respecting the EDR data spared the trial court the task of determining whether the remaining evidence alone warranted a verdict of guilt beyond a reasonable doubt.

6. Appellant argued the trial court's *sua sponte* reopening of the record violated the double jeopardy clauses of the United States and Pennsylvania Constitutions, U.S. Const. amend. V; Pa. Const. Art. I, § 10, as the parties had rested their cases and the trial court had begun deliberation.