[J-106-2016] [MO: Wecht, J.]

## IN THE SUPREME COURT OF PENNSYLVANIA
## MIDDLE DISTRICT

| | | |
|---|---|---|
| MEGAN L. SHINAL AND ROBERT J. SHINAL, HER HUSBAND, | : | No. 31 MAP 2016 |
| | : | |
| | : | Appeal from the Order of the Superior |
| Appellants | : | Court at No. 1714 MDA 2014 dated |
| | : | August 25, 2015, reconsideration |
| | : | denied October 28, 2015, Affirming the |
| v. | : | Judgment of the Montour County Court |
| | : | of Common Pleas, Civil Division, dated |
| | : | September 29, 2014 at No. 588-CV- |
| STEVEN A. TOMS, M.D., | : | 2009. |
| | : | |
| Appellee | : | ARGUED: November 2, 2016 |

## DISSENTING OPINION

**JUSTICE BAER**                                   **DECIDED: June 20, 2017**

I respectfully but fervently dissent from the Majority's holding that a physician's qualified staff cannot aid the physician in fulfilling his duty to obtain a patient's informed consent. The law simply does not support such a proposition. Thus, the Superior Court properly concluded that the trial court did not abuse its discretion by instructing the jury that, in determining whether Dr. Toms provided Mrs. Shinal with the appropriate information to inform her consent, the jury could consider relevant information communicated to Mrs. Shinal by any qualified person acting as an assistant to Dr. Toms. Moreover, while I agree with the Majority that the trial court did not err by refusing to strike four prospective jurors for cause, I disagree with the Majority's holding that, in some cases, an appellate court should utilize a *de novo* standard when reviewing whether a trial court erred in addressing a request to strike a juror for cause. Rather, this Court's well-established precedent provides that appellate courts should

employ an abuse-of-discretion standard when reviewing whether trial courts erred in disposing of requests to strike prospective jurors for cause. Because the Superior Court reached the correct result in this matter, I would affirm that court's judgment.

## I. Jury Instruction: Informed Consent

The Majority correctly concludes that a physician owes a duty to his patient to obtain the patient's informed consent to undergo certain procedures. This principle of law is indisputable. Indeed, Subsection 1303.504(a) of the Medical Care Availability and Reduction of Error Act ("MCARE Act" or "Act") clearly and unambiguously establishes this duty. 40 P.S. § 1303.504(a).[1] The trial court's instruction to the jury adequately communicated this legal principle. N.T., 4/21/2014, at 223 ("A physician must obtain a patient's consent to perform surgery on a patient. The patient's consent must also be informed.").

I also agree with the Majority that a physician cannot delegate this duty. In other words, a physician cannot assign the duty to obtain a patient's informed consent to a

---

[1] Subsection 1303.504(a) states, in full, as follows:

**(a) Duty of physicians.**--Except in emergencies, a physician owes a duty to a patient to obtain the informed consent of the patient or the patient's authorized representative prior to conducting the following procedures:

(1) Performing surgery, including the related administration of anesthesia.

(2) Administering radiation or chemotherapy.

(3) Administering a blood transfusion.

(4) Inserting a surgical device or appliance.

(5) Administering an experimental medication, using an experimental device or using an approved medication or device in an experimental manner.

40 P.S. § 1303.504.

member of his staff or anyone else and, thus, avoid liability for any damaging breach of the duty. Rather, the duty to obtain a patient's informed consent attaches solely to the patient's physician, and that physician is liable to the patient if the patient can establish that the physician performed a qualifying procedure on the patient without his informed consent.

It is at this point of the analysis that I part company with the Majority. Based upon its determination that a physician cannot delegate his duty to obtain a patient's informed consent, the Majority makes a leap in logic and concludes that a physician is prohibited from utilizing his qualified staff to aid him in performing this duty. However, a prohibition on the delegation of this duty does not mean that a physician is precluded from utilizing a qualified member of his staff to aid in fulfilling the physician's duty to obtain a patient's informed consent.

Indeed, immediately after the MCARE Act specifies that a physician has the duty to obtain a patient's informed consent, the Act explains that "[c]onsent is informed if the patient has been given a description of a procedure set forth in subsection (a) and the risks and alternatives that a reasonably prudent patient would require to make an informed decision as to that procedure." 40 P.S. § 1303.504(b). Thus, while the MCARE Act assigns to physicians the duty to obtain informed consent and requires that certain information must be conveyed to patients to inform their consent, the Act conspicuously does not mandate that only physicians themselves can provide information to patients to inform their consent. Instead, the Act explains that consent is informed "if the patient has been given" the information specified in Subsection 1303.504(b).[2] The Legislature could have, but did not, expressly require that only

---

[2] Subsection 1303.504(b) of the MCARE Act provides, in full, as follows:

(continued...)

physicians can provide patients with information regarding informed consent. Instead, the Legislature crafted the first sentence of Subsection 1303.504(b) in the passive voice, thus leaving open the method of informing a patient's consent to the professional judgment and discretion of the physician charged with the duty of obtaining the patient's informed consent. Stated succinctly, there is nothing in the law of this Commonwealth precluding a physician from utilizing his qualified staff to aid in his duty to obtain a patient's informed consent. If qualified staff is somehow negligent in aiding a physician in informing a patient's consent, then the physician remains liable if that negligence results in the failure to obtain the patient's informed consent.

To hold otherwise improperly injects the judiciary into the day-to-day tasks of physicians such as Dr. Toms and fails to acknowledge the reality of the practice of medicine. For instance, as the Majority describes, Dr. Toms testified that he reviewed

---

(...continued)

**(b) Description of procedure.--**Consent is informed if the patient has been given a description of a procedure set forth in subsection (a) and the risks and alternatives that a reasonably prudent patient would require to make an informed decision as to that procedure. The physician shall be entitled to present evidence of the description of that procedure and those risks and alternatives that a physician acting in accordance with accepted medical standards of medical practice would provide.

40 P.S. § 1303.504(b). The Majority contends that "Section 504 does not merely require that the patient's consent be informed; it specifically imposed the duty upon physicians to provide to the patient the requisite information and to obtain informed consent." Majority Opinion at 39. As described *supra*, the first sentence of Subsection 1303.504(b) does not support this contention.

Moreover, the Majority cites the second sentence of Subsection 1303.504(b) to bolster its position that only physicians can provide information to patients to aid in informing their consent. Majority Opinion at 39-40. In my view, the second sentence of this subsection does not speak to who can provide information to a patient to aid in informing the patient's consent. Rather, the sentence simply allows a physician to present evidence regarding the type of information other qualified physicians would provide to similarly situated patients to inform their consent in defense of a claim that the physician failed to obtain a patient's informed consent.

with Mrs. Shinal the alternatives, risks, and benefits of total versus subtotal resection. Majority Opinion at 3. After that visit with Dr. Toms, Mrs. Shinal decided to undergo surgery. However, soon thereafter, Mrs. Shinal called and asked Dr. Shinal's physician assistant questions related to the surgery - questions that the physician assistant answered. *Id.*

Under the Majority's holding, the trial court should not have allowed the jury to consider whether the physician assistant provided answers to Mrs. Shinal that assisted Dr. Toms fulfill his duty to obtain Mrs. Shinal's informed consent to undergo surgery. Instead, it would seem, for fear of incurring liability for failing to obtain Mrs. Shinal's informed consent, Dr. Toms had to address personally all of Mrs. Shinal's surgery-related phone calls, as well as all of his other patients' surgery-related calls. Absent express legislation, physicians simply should not be needlessly charged with the responsibility of being involved personally with every conceivable aspect of their practices that may assist them in informing their patients' consent.

Thus, in addition to my conclusion that the Majority's holding is legally inaccurate, I fear that today's decision will have a far-reaching, negative impact on the manner in which physicians serve their patients. For fear of legal liability, physicians now must be involved with every aspect of informing their patients' consent, thus delaying seriously ill patients access to physicians and the critical services that they provide. Courts should not impose such unnecessary burdens upon an already strained and overwhelmed occupation when the law does not clearly warrant this judicial interference.

Based upon this foundation, I conclude that the Superior Court correctly determined that the trial court did not abuse its discretion by instructing the jury that, in determining whether Dr. Toms provided Mrs. Shinal with the appropriate information to

inform her consent, the jury could consider relevant information communicated to Mrs. Shinal by any qualified person acting as an assistant to Dr. Toms.

## II. Juror Challenge for Cause

Before addressing whether the trial court erred by refusing to strike several prospective jurors for cause, the Majority addresses the standard of review that an appellate court should employ when considering such matters. Majority Opinion at 10-17. Agreeing with the Superior Court's decision in *Cordes v. Association of Internal Medicine*, 87 A.3d 829 (Pa. Super. 2014), the Majority concludes that an appellate court's standard of review should differ depending upon whether bias is presumed, as resulting from the juror's close familial, financial, or situational relationship with the parties, counsel, victims, or witnesses, or bias is actual, as revealed by the juror's conduct and answers to questions. *Id.* at 15-16.

Regarding the former scenario, the Majority observes that, when a trial court concludes that a prospective juror's relationship with a party, counsel, victim, or witness is sufficiently close, that trial court should presume prejudice and dismiss the juror for cause. *Id.* at 16. Citing to *Commonwealth v. Briggs*, 12 A.3d 291 (Pa. 2011), the Majority opines that, in this circumstance (presumption of bias), this Court "will review the trial court's determination for an error of law." *Id.* The Majority then asserts correctly that this Court reviews "questions of law" *de novo*. *Id.*

Next, addressing when a trial court determines that there is actual bias, the Majority concludes that an appellate court should employ an abuse-of-discretion standard when reviewing a trial court's decision regarding the dismissal of the juror. *Id.* at 16-17. Lastly, the Majority posits that these two scenarios are not mutually exclusive, suggesting that, at times, an appellate court should utilize some combination of a *de novo* and an abuse-of-discretion standard of review. *See id.* at 17 (explaining that

"even in the context of presumed prejudice, the trial court retains discretion to explore and assess the relevant relationship presented").

In my view, this Court's precedent requires a more simplistic and straight-forward approach to appellate review of trial courts' decisions regarding whether to strike prospective jurors for cause: Appellate courts should review such decisions for an abuse of discretion. *See, e.g., Briggs*, 12 A.3d at 332–33 (Pa. 2011) (explaining that a "trial court's decision regarding whether to disqualify a juror for cause is within its sound discretion and will not be reversed in the absence of a palpable abuse of discretion") (citing *Commonwealth v. Stevens*, 739 A.2d 507, 521 (Pa. 1999)).

For instance, in *Briggs*, which the Majority cites in support of its *de novo* review discussion, this Court did not employ a *de novo* standard of review when considering whether the trial court erred by failing to presume prejudice and strike for cause three jurors who allegedly had a significant relationship with the victim or her family members. Instead, in considering this issue, the Court expressly stated, "A trial court's decision regarding whether to disqualify a juror for cause is within its sound discretion and will not be reversed in the absence of a palpable abuse of discretion." *Briggs*, 12 A.3d at 332–33. To the extent that *Briggs*, as suggested by the Majority, required this Court to determine if the trial court committed an "error of law" in examining whether to presume prejudice as to these jurors, that determination was encompassed within the Court's abuse-of-discretion review, as such a review contemplates consideration of whether the trial court overrode or misapplied the law. *See Commonwealth v. Safka*, 141 A.3d 1239, 1249 (Pa. 2016) ("[A]n abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will, as shown by the evidence or the record, discretion is abused.") (citation omitted).

Here, the Shinals sought to strike for cause four jurors due to their alleged relationships with Geisinger entities. As the Majority highlights, after closely examining these relationships, the trial court determined that the relationships were too attenuated to presume the jurors were biased and that, given the jurors' credible assurances of impartiality, they were fit to serve on the jury. Majority Opinion at 7. The record establishes that, in reaching these conclusions, the trial court did not override or misapply the law; moreover, the record in no way suggests that the court's decision was the result of partiality, prejudice, bias, or ill-will. Thus, the court did not abuse its discretion by refusing to strike the jurors for cause.[3]

---

[3] This Court also granted allowance of appeal to consider whether the Superior Court properly determined that the Shinals waived their "exhaustion of challenges" argument. By way of background, in their brief to the Superior Court, the Shinals contended that the trial court erred by refusing to strike for cause four prospective jurors. The Shinals further argued that the error prejudiced them because it forced them to exhaust their peremptory challenges. Shinals' Superior Court Brief at 38-41. The Shinals insisted that, had the trial court properly struck the four jurors for cause, they would have utilized their peremptory challenges to remove other defense-friendly jurors from the venire. The Shinals noted the names of several jurors that they would have stricken with their peremptory challenges. *Id.*

Like this Court, the Superior Court concluded that the trial court did not err by refusing to strike the four jurors for cause. Yet, after reaching that conclusion, the Superior Court unnecessarily addressed the Shinals' argument that the alleged error prejudiced them. Specifically, the Superior Court deemed waived the Shinals' "exhaustion of challenges" argument, because the Shinals "failed to preserve their claim by making a timely, specific objection of too few peremptories, and they did not request additional ones." *Shinal v. Toms*, 122 A.3d 1066, 1078 (Pa. Super. 2015). The court also supported its finding of waiver by pointing out that the Shinals did not mention to the trial court that they wished to strike the jurors who they later named in their Superior Court brief. *Id.*

The Superior Court's conclusion that the trial court did not err by refusing to strike the jurors for cause rendered moot the Shinals' "exhaustion of challenges" argument. Thus, the court's finding of waiver is a classic example of *obiter dicta*. Because this Court also holds that the trial court did not err by refusing to strike the jurors for cause, I believe the Court simply should refrain from commenting on the Superior Court's gratuitous finding of waiver.

## III. Conclusion

Because the Superior Court properly affirmed the trial court's judgment entered in favor of Dr. Toms, I would affirm its judgment.

Chief Justice Saylor joins this dissenting opinion and Justice Mundy joins Part I of this dissenting opinion.