J-S78035-17

NON-PRECEDENTIAL DECISION — SEE SUPERIOR COURT I.O.P 65.37

| | | |
|---|---|---|
| DAVID N. SENGER AND KATHY L. SENGER, | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellees | : | |
| | : | |
| v. | : | |
| | : | |
| PANORAMA VENTURES, LLP AND MEDINA REVENUE COMPANY, LLC, | : | |
| | : | |
| Appellants | : | No. 949 WDA 2017 |

Appeal from the Judgment Entered July 12, 2017
in the Court of Common Pleas of Erie County,
Civil Division at No(s): 11559-2015

BEFORE:   OLSON, DUBOW, and STRASSBURGER, JJ.*

MEMORANDUM BY STRASSBURGER, J.:         FILED JANUARY 31, 2018

Panorama Ventures, LLP (Panorama) and Medina Revenue Company, LLC (Medina) (collectively, Appellants)[1] appeal from the judgment entered on July 12, 2017, which awarded them $6,240.45 against David N. Senger and Kathy L. Senger (the Sengers) after a non-jury trial.  We affirm.

The Sengers are the owners of and reside in a home on a four-acre parcel of land in Waterford, Pennsylvania.  They also own an adjacent 60-acre parcel (Adjacent Parcel).  On December 18, 1973, prior owners of the Adjacent Parcel, Henry and Ruth Loper (the Lopers), entered into an oil and gas lease with Eastern American Energy Company (Eastern American).    Eastern

---

[1] Both entities are owned by Joseph Fowler.

*Retired Senior Judge assigned to the Superior Court.

American agreed to pay the Lopers one-eighth of the market price for gas it extracted from wells on the Adjacent Parcel. In addition, the Lopers were to receive free gas for use in any house on the Adjacent Parcel.

In 2003, the next owner of both parcels, Jeffrey J. Orbanek,[2] with permission of Eastern American, "had a line installed hooking up his residence on the four[-]acre parcel to the gas well on the [Adjacent Parcel.]" Complaint, 5/21/2015, at ¶ 9. According to the Sengers, Orbanek "received free gas for his residence from the time of the hook-up to the well up until the time of conveyance of the residence to [the Sengers] on June 5, 2008." Id. at ¶ 10. The Sengers continued to receive free gas from the well from Eastern American until Eastern American assigned its interest in the well to Panorama on June 23, 2011.

The Sengers received invoices from Medina in 2013, which showed that the Sengers' 2012 gas usage was free. However, on February 27, 2014, the Sengers received an invoice from Medina for $1,877.35 for gas usage.[3] The Segners did not pay the invoice or any subsequent invoices, and they filed the instant declaratory judgment action against Appellants on May 21, 2015.

On June 5, 2015, Appellants filed an answer, new matter, and counterclaim. According to Appellants, after Panorama was assigned an

---

[2] Orbanek is Mrs. Senger's brother.

[3] That amount was calculated as the Sengers' owing $1,916.32 less $38.97 in royalties.

interest in the well, the Sengers informed Fowler that they were entitled to receive free gas. When the Sengers were unable to produce documentation to support such a claim, Panorama began charging them for gas. According to Panorama, the Sengers owed $7,250.35 for gas.

A non-jury trial commenced on December 12, 2016. The trial court concluded that "there is no legal basis to permit [the Sengers] to receive free gas from" the Adjacent Parcel. Trial Court Order, 3/3/2017, at 4. The trial court then ordered that the parties try to settle the claims set forth in Appellants' counterclaim. Id.

"The parties were not successful in amicably resolving the amount [the Sengers] owed [Appellants], and so informed the court on or about April 20, 2017." Post-Trial Motions, 4/27/2017, at 2. Thus, on April 24, 2017, the trial court entered a verdict in favor of Appellants and against the Sengers for $2,500. Appellants filed post-trial motions, claiming they were owed $8,728.77 from the Sengers. The Sengers also filed post-trial motions. On May 5, 2017, the trial court ordered Appellants to clarify certain items in order to calculate damages.

Appellant objected to providing this supplemental information, but did provide the information the trial court requested. Based on the record and supplemental information supplied by Appellants, the trial court calculated a new damages award of $6,240.45 in favor of Appellants. The trial court concluded that Appellants were not entitled to late fees. In addition, the trial

court concluded that the rate for gas Appellants could charge to the Sengers should be the rate National Fuel Gas (NFG) charges less distribution costs. The trial court offered the following rationale.

> NFG's distribution cost is not applicable to [the Sengers] for a host of reasons. The most fundamental ground is the contractual language between the parties. The relevant lease calls for the lessee ([Appellants] herein) to pay a royalty to lessor ([the Sengers] herein) based on "the market price at the well for gas used…". This language establishes the price point of the contract/lease as the value of gas at the wellhead. It also means [Appellants] are paying a royalty to [the Sengers] based on the price of gas at the wellhead instead of the higher price of gas sold by [Appellants] at the end of [Appellants'] distribution line. Thus the attempt by [Appellants] to switch the price point from the wellhead to the residential end user and charge [the Sengers] the higher price of the end user is untenable under the contractual terms of the lease. The elimination of the distribution costs assessed by NFG returns the price point between the parties as close as possible to the wellhead.
>
> In addition, the residential end user of NFG's gas is in a much different position than [the Sengers]. Unlike the residential customer at the end of NFG's distribution line, the gas consumed by [the Sengers] is owned by them. Further, [the Sengers] do not use NFG's distribution line. Instead, at their cost, [the Sengers] own and maintain a distribution line transporting gas from the wellhead to their home. The amount of gas used by [the Sengers] is measured by a meter installed and maintained by [Appellants] at the wellhead. Separately, [Appellants] do not incur any additional cost for the gas consumed by [the Sengers] since this is gas drawn regardless of its use by [the Sengers]. For all of the foregoing reasons, the downstream costs that NFG charges to end users are not applicable to [the Sengers].

Verdict, 6/15/2017, at 1-2 (unnumbered).

Based on the foregoing, the trial court calculated the "appropriate rate [a]s the price charged in the open market by National Fuel Gas [(NFG)] for

- 4 -

gas delivered to a residential customer less the 'distribution costs' charged by NFG of $2.54 per MCF."[4] Id. at 1. (unnumbered). Thus, on June 15, 2017, the trial court entered a verdict in favor of Appellants and against the Sengers for $6,240.45. Appellants filed a notice of appeal,[5] and both Appellants and the trial court complied with Pa.R.A.P. 1925.

On appeal, Appellants contend that the trial court erred in calculating the verdict. Appellants' Brief at 14-22. Appellants first object on procedural grounds, specifically that the trial court erred or abused its discretion by re-opening the record after the non-jury trial to calculate the amount owed as a verdict. Appellants suggest that the trial court's May 5, 2017 order, which ordered that both parties provide additional information to aid the court in calculating damages, "violates Pennsylvania law and its related Rules of Evidence." Id. at 16.

In considering this issue, we first point out that Appellants do not actually cite any Pennsylvania law or Rule of Evidence to support this contention. Id. at 16-19. However, our Supreme Court has recently considered the issue of "whether the trial court erred after the close of evidence by sua sponte reopening the record for the presentation of additional evidence." Commonwealth v. Safka, 141 A.3d 1239, 1246 (Pa. 2016). The

---

[4] MCF is an abbreviation for 1,000 cubic feet.

[5] Appellants filed a praecipe for the Prothonotary to enter judgment on the verdict on July 12, 2017.

Supreme Court concluded that it was indeed within a trial court's discretion in a non-jury trial to re-open the record "as long as … there is no prejudice to either party and, accordingly, justice is served." Id. at 1251.

Instantly, the trial court's decision to re-open the record actually benefitted Appellants. Prior to re-opening the record, Appellants received an award of $2,500. After the trial court re-opened the record, that award increased to $6,240.45. While this amount is less than the $8,728.77 which Appellants requested, it is much harder for them to argue they were prejudiced by the re-opening of the record. Accordingly, we conclude that the trial court did not abuse its discretion by re-opening the record, and Appellants are not entitled to relief on this basis.

Next, Appellants argue that the amount used for distribution costs was inadmissible hearsay.[6] Appellants' Brief at 19-21. Here, the trial court ordered Appellants to provide a distribution cost, and Appellants complied with this order and obtained this information. In an affidavit signed by Fowler, he stated, that NFG "incurs operating costs of $2.54 per MCF which is known as

---

[6] Appellants objected on this basis in their post-trial submission. See Defendants' Post Trial Submissions As Ordered By Court, 6/5/2017, at ¶ 8 ("To the extent the information requested by the [c]ourt is not already in the record at the close of trial, the information constitutes inadmissible hearsay because it consists of statements of fact offered for the truth of the matter asserted offered outside of court, not under oath and without the opportunity for cross examination.").

its 'distribution charge.[']"  Affidavit of Joseph Fowler, Exhibit C to Defendants

Post-Trial Submissions, at ¶ 5.

The trial court responded to this argument as follows.

> [Appellants'] argument that the "distribution costs" within the published NFG rate constitutes inadmissible hearsay is inconsistent with its prior position since the NFG rate was introduced by [Appellants] without the testimony of a[n] NFG official.  It is also not hearsay since it was presented in Paragraph 5 of the June5, 2017 Affidavit of Joseph Fowler, the sole owner of [Appellants], whose averments were based on his knowledge of the components of the published NFG rates.  Fowler's affidavit also means that [Appellants'] complaint about this evidence not being subject to cross-examination is baseless unless [Appellants] want to cross-examine their owner/witness.

Trial Court Opinion, 7/14/2017, at 3-4.

The trial court's conclusions are supported by the record.  Fowler

testified at trial that instead of specifying prices in their leases, his companies

use NFG gas rates "because they publicize their rates and they are local." N.T.,

12/12/2016, at 54.  Thus, it was within the trial court's discretion to ask

Appellants to provide additional, relevant information about that rate.  To the

extent that $2.54 per MCF is not a reasonable number,[7] it was within

Appellants' control to offer a different number.  Accordingly, we conclude that

Appellants' purported hearsay objection does not entitle them to relief.

---

[7] It should be noted that Appellants' primary issue throughout this appeal is that the trial court subtracted any amount for distribution costs, not with the number itself.

Appellants next argue that the trial court erred by using distribution costs for 2017 when this lawsuit dealt with the years 2011 to 2016. Appellants' Brief at 21-22. In the trial court's May 5, 2017 order, the trial court did request distribution costs for 2011 through 2017. Order, 5/5/2017, at ¶ f. However, Fowler's affidavit does not indicate that the $2.54 per MCF was for the year 2017. Thus, we disagree that the trial court used a 2017 number, and therefore Appellants are not entitled to relief.

Finally, Appellants argue that the trial court erred by not reaching a verdict of $8,728.77. Appellants' Brief at 23-26. This argument is premised upon trial court error in subtracting the distribution costs. Id. at 26 ("By subtracting distribution costs, the trial court held that [Appellants] are not allowed to cover their operating costs or earn a profit, even the amount of profit approved for a regulated utility.").

We consider this issue mindful of our standard of review.

> Our appellate role in cases arising from non-jury trial verdicts is to determine whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in any application of the law. The findings of fact of the trial judge must be given the same weight and effect on appeal as the verdict of a jury. We consider the evidence in a light most favorable to the verdict winner. We will reverse the trial court only if its findings of fact are not supported by competent evidence in the record or if its findings are premised on an error of law. However, [where] the issue … concerns a question of law, our scope of review is plenary.
>
> The trial court's conclusions of law on appeal originating from a non-jury trial are not binding on an appellate court because

it is the appellate court's duty to determine if the trial court correctly applied the law to the facts of the case.

Stephan v. Waldron Elec. Heating & Cooling LLC, 100 A.3d 660, 664–65 (Pa. Super. 2014) (quoting Wyatt, Inc. v. Citizens Bank of Pennsylvania, 976 A.2d 557, 564 (Pa. Super. 2009) (internal citations omitted)).

The trial court offered the following analysis in its Pa.R.A.P. 1925 opinion.

> In this case, the lease between the parties did not set forth the price term for gas supplied to [the Sengers]. In the absence of a contractual price, the Uniform Commercial Code permits a reasonable price to be determined. 13 Pa.C.S.[ §] 2305(a)(1). The lease established the price of gas at the wellhead as the point for determining the royalties paid by [Panorama]. Therefore it was reasonable to assess the price of gas sold to [the Sengers] as the same price point as the royalties paid by [Appellants], at the well head, particularly since this was the point at which [the Sengers] were receiving the gas.
>
> The method used to calculate damages was not buried or speculative; instead it was transparently explained in writing. The fundamental differences between [the Sengers] and NFG's residential customers was highlighted. [The Sengers] owned the gas they received from [Appellants]. [The Sengers] do not use [Appellants'] distribution line. [The Sengers] received their gas at the wellhead and not at the end of NFG's distribution line. At their continuing expense, [the Sengers] own and maintain a distribution system which transports gas from the wellhead to their home. [The Sengers'] distribution system includes a meter (at their cost, not [Appellants']) to measure the amount of gas entering [the Sengers'] line. The gas diverted to [the Sengers] does not cost [Appellants] anything extra to draw from the well on [the Sengers'] property. Notably, [the Sengers'] distribution system was in place and visible to [Appellants] prior to [their] purchase of the leasehold rights.

Trial Court Opinion, 7/14/2017, at 5-6.

Based on the foregoing, we do not agree with Appellants that the evidence supports only the amount demanded by Appellants. Instead, the trial court carefully considered their arguments, and concluded that it was appropriate to subtract distribution costs from the price charged to the Sengers for gas. Thus, Appellants are not entitled to relief.

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 1/31/2018