J-S11003-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ROBERT PAUL BROZENICK | : | |
| | : | |
| Appellant | : | No. 1086 WDA 2018 |

Appeal from the Judgment of Sentence Entered June 28, 2018
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0002351-2017

BEFORE: NICHOLS, J., MURRAY, J., and MUSMANNO, J.

MEMORANDUM BY NICHOLS, J.: **FILED JUNE 8, 2020**

Appellant Robert Paul Brozenick appeals from the judgment of sentence imposed following his jury trial conviction for four counts of terroristic threats and four counts of simple assault.[1] Appellant argues that the trial court erred by denying his motion for judgment of acquittal and reopening the record, rejecting his request for a missing witness jury instruction, and denying his motion for a mistrial based on an alleged ***Brady***[2] violation. We affirm.

By way of background, this case arose from an incident that occurred in the Borough of Carnegie, Allegheny County on December 22, 2016 at approximately 2:40 p.m. N.T. Trial at 43-44, 55-56, 127. At that time, Trey Gieg and four juveniles, J.W., E.T., S.T., and B.B. (collectively, the

---

[1] 18 Pa.C.S. §§ 2706(a)(1), 2701(a)(3).

[2] ***Brady v. Maryland***, 373 U.S. 83 (1963).

complainants), were sitting in a parked car on 6th Avenue across from Appellant's residence.

Appellant approached the complainants' car, tapped on the window with a handgun, and proceeded to "sweep" the vehicle, pointing his gun at all of the occupants. Appellant later testified that he saw the complainants passing around a smoking device and believed that they were using drugs on his street. He stated that he pulled out his firearm and called the police because he felt threatened.

On April 10, 2017, the Commonwealth filed a criminal information charging Appellant with five counts of terroristic threats and five counts of simple assault, each count relating to one of the five complainants.

On October 10, 2017, Appellant filed a motion to compel discovery, seeking, among other things, "the address and contact information (phone number preferred) for each witness the Commonwealth intends to call at trial, specifically [J.W., E.T., B.B., S.T.,] and Trey Gieg." Mot. to Compel Discovery, 10/10/17, at 2 (unpaginated). At the motions hearing on December 19, 2017, Appellant's counsel explained:

> I spoke with the [previous] assistant district attorney that was assigned to this case . . . We came to an agreement because [the Commonwealth would not] agree to give the phone numbers or addresses for the Commonwealth witnesses, [so the Commonwealth] sent a letter authored by myself requesting that these witnesses get in touch with me one way or the other whether they want to have an interview or not. Only one person responded. I'm asking for the witnesses' addresses. These wouldn't be given to [Appellant]. I understand that was a concern of [the Commonwealth].

N.T. Motions Hr'g, 12/19/17, at 10-11.

Ultimately, the trial court declined Appellant's request for the Commonwealth to provide phone numbers or addresses for the complainants. *Id.* at 12. Instead, the trial court ordered the Commonwealth to contact each of the witnesses, "[g]et a date and time to interview all of them" and then "make them available for the defense."[3, 4] *Id.*

On April 3, 2018, the matter proceeded to a jury trial. The Commonwealth presented testimony from Officer Gittings, Sergeant Seaman, and two of the complainants, J.W. and E.T. N.T. Trial at 27-73.

J.W. testified that Appellant came out of his house, then walked to the complainants' car and pointed the gun at all of the occupants. *Id.* at 32. She testified that none of the complainants made any verbal threats or made any threatening gestures. *Id.* at 35. J.W. further testified that no one inside the car was armed and that she felt scared and "in shock." *Id.* She also indicated that one of the complainants was using a vaping device in the car. *Id.* E.T. corroborated J.W.'s testimony, adding that she felt "very scared" and that Appellant appeared to be angry. *Id.* at 42-54, 48, 46.

---

[3] It does not appear that the trial court memorialized its ruling in a written order.

[4] It is not clear from the record whether these interviews occurred. However, Appellant has not claimed that trial counsel did not have the opportunity to interview the complainants prior to trial.

Carnegie Police Officer David Gittings testified that he spoke with the complainants and did not observe any indication of drug use, nor did he see any drug paraphernalia or weapons. *Id.* at 57-58, 62. Officer Gittings stated that although he "looked into the car," he did not conduct a "search underneath the seats or compartment" of the vehicle. *Id.* at 62.

Sergeant Shawn Seaman testified that he spoke with Appellant. Sergeant Seaman explained that Appellant "kept quoting the castle doctrine" and "stating that he felt threatened" by the complainants. *Id.* at 69. Sergeant Seaman recalled that although Appellant indicated that he felt threatened by the juveniles, he also stated that they had not made any threatening gestures or made any advancements toward him, because he "wasn't giving them a chance to." *Id.* at 70.

After the Commonwealth rested, Appellant requested a sidebar, at which the following exchange occurred:

| [Appellant]: | I would make a motion for judgment of acquittal based on the fact that the Commonwealth has alleged that my client threatened to call the police and brandished a firearm. The sufficiency-- |
|---|---|
| [Trial court]: | What about the other [complainants]? |
| [The Commonwealth]: | Two of the other remaining three [complainants, S.T. and Trey Gieg,] were present [in court] today. As a strategy and based upon discussion with them in the hallway, they are comfortable with the testimony as presented. |
| [Trial court]: | How about their state of mind? |

- 4 -

[The Commonwealth]: The Commonwealth's position would be their state of mind was that [Appellant] intended to threaten violence and made terroristic threats --

[Trial court]: There were no statements made.

[Appellant]: Given the lack of testimony by these individuals, we would move for a judgment of acquittal.

[Trial court]: You want to call them?

[The Commonwealth]: As to the other [complainants], I can call them. I will call them.

[Trial court]: It's up to you. I am going to grant a judgment of acquittal on them. I don't know which count is which.

[The Commonwealth]: I will call them.

[Trial court]: They are all Jane Doe or John Doe except for the adult.

[The Commonwealth]: I will call the other [complainants]. They are present.

[Trial court]: Did you rest?

[The Commonwealth]: Yes.

[Trial court]: Do you move to reopen the record?

[The Commonwealth]: Yes.

[Trial court]: Do you wish to make a motion?

[The Commonwealth]: Yes. I would make a motion.

[Appellant]: I object based on the fact that the Commonwealth is only reopening the

                                        record because they didn't meet their
                                        burden.  Their lack of good faith --

        [Trial court]:              I'm overruling that.    I'll give [the
                                        Commonwealth] latitude to do that.

N.T. Trial at 73-75.

        After both S.T. and Trey Gieg testified, the Commonwealth rested.  At

sidebar, Appellant moved for a judgment of acquittal with respect to the fifth

complainant, B.B., who did not testify.  ***Id.*** at 93-94.  The trial court granted

Appellant's motion with respect to the charges involving B.B.  ***Id.*** at 95.

        The trial court then asked the parties if there were any requested jury

instructions.  ***Id.*** at 96.  Appellant asked the trial court give a missing witness

jury instruction regarding B.B., "given that [he] did not appear" for trial.  ***Id.***

at 98.  Specifically, Appellant explained that, based on the Commonwealth's

failure to call B.B., "the jury may infer that the witness would have been

favorable to the defense."  ***Id.*** at 99.  Further, Appellant added that "the

missing witness is in fact in custody in Abraxas currently.  So, the reason he's

not here is because he is incarcerated."  ***Id.***  The trial court responded that

"Abraxas is not a jail" and is instead "a treatment program for addiction."  ***Id.***

Appellant also requested an instruction on justification, explaining that

Appellant intended to testify that he acted in self-defense.  ***Id.*** at 100.  The

trial court deferred ruling on the proposed jury instructions so that Appellant

could testify.  ***Id.*** at 101-102.

        During his testimony, Appellant stated that he noticed the complainants

sitting in a car parked across the street from his residence around 2:00 pm.

*Id.* at 104-05. Appellant went outside to inspect his own car, which was parked near the complainants' car. *Id.* at 108-10. At that time, he saw the complainants in their car, passing around "what looked like a smoking device." *Id.* at 110-11. After the complainants noticed Appellant standing outside of their car, they "got kind of panicky, like startled" and began moving around. *Id.* at 111. Appellant stated that he saw the driver reach between his legs and that he "felt threatened," because he thought the driver was "reaching for a weapon." *Id.* Appellant testified that he was "scared" and that he thought he had "walked in on a drug deal." *Id.* At that point, Appellant testified that he pulled his gun out, told the complainants to leave, and stated that he was calling the police. *Id.* At the conclusion of Appellant's testimony, the defense rested. *Id.* at 126.

The next day, Appellant renewed his request for a missing witness jury instruction. *Id.* at 129. Appellant added that because B.B. was in a drug rehabilitation facility, his testimony would be helpful to Appellant's self-defense claim. *Id.* at 130. The trial court denied Appellant's request, stating that there was no "nexus" between the fact that B.B. was undergoing drug rehabilitation treatment and Appellant's belief the complainants were using drugs when Appellant confronted them. *Id.* at 130-32. Further, the trial court explained that B.B. was not exclusively available to the Commonwealth, did not have special information material to the issue at hand, and his testimony would have been cumulative of the testimony from other witnesses. *Id.* at 133-34.

Appellant then moved for a mistrial, alleging that the Commonwealth violated **Brady** by failing to disclose that B.B. was in a drug rehabilitation facility. **Id.** at 132. In denying Appellant's motion, the trial court explained that the information about B.B.'s rehabilitation was not useful to the defense, as Appellant could "not get into anything about drug use" or why B.B. was in rehabilitation at the time of trial. **Id.** Further, the trial court noted that Appellant did not have "a scintilla of evidence that [B.B.] was using drugs two years ago," as the testimony at trial reflected that the complainants were smoking a vape pen. **Id.** at 133.

Ultimately, the jury found Appellant guilty of four counts of terroristic threats and four counts of simple assault. **Id.** at 174. On June 28, 2018, the trial court sentenced Appellant to an aggregate term of two years' probation. On July 6, 2018, Appellant filed a timely post-sentence motion challenging the weight of the evidence. Following a hearing on July 10, 2018, the trial court denied Appellant's motion.

Appellant subsequently filed a timely notice of appeal and a court-ordered Pa.R.A.P. 1925(b) statement. The trial court issued a Rule 1925(a) opinion asserting that Appellant's claims were meritless.[5]

Appellant raises the following issues on appeal:

---

[5] The trial court initially filed a Rule 1925(a) opinion on August 1, 2019. However, the following day, the trial court issued an amended opinion indicating that the original version was an incomplete draft that was mistakenly filed. **See** Trial Ct. Op., 8/2/19, at 1 n.1.

1. Whether the trial court erred by denying [Appellant's] motion for judgment of acquittal when the Commonwealth initially rested and by further allowing the Commonwealth to reopen the record where the Commonwealth had failed to present sufficient evidence to sustain three counts of simple assault and three counts of terroristic threats?

2. Whether the trial court erred in denying [Appellant's] motion for a mistrial based on the Commonwealth's failure to disclose material, exculpatory evidence in violation of [***Brady***]?

3. Whether the trial court erred by failing to give curative instructions to the jury about the missing complaining witness and his current locations, thus biasing the jury against [Appellant's] self-defense claim?

Appellant's Brief at 6 (some capitalization omitted).

**Reopening the Record**

In his first issue, Appellant argues that "[t]he trial court abused its discretion by reopening the record where not only had the Commonwealth rested, but the defense had moved for a judgment of acquittal" on the charges involving B.B., S.T., and Trey Gieg. Appellant's Brief at 16. Appellant asserts that after the trial court rejected the Commonwealth's argument that J.W. and E.T.'s testimony was sufficient to establish the charges against all five complainants, it provided the Commonwealth with "numerous opportunities" to move to reopen the record. ***Id.*** at 26-27. Further, Appellant contends that by asking the Commonwealth if it intended to reopen the record, the trial court "effectively made the motion for the Commonwealth." ***Id.*** Finally, Appellant asserts that the instant case is distinguishable from our Supreme Court's decision in ***Commonwealth v. Tharp***, 575 A.2d 557 (Pa. 1990), where the

Commonwealth presented circumstantial evidence and reopened the record to clarify a single objective fact. *Id.* at 23-24.

The Commonwealth responds that the trial court properly exercised its discretion to reopen the record and asserts that the instant case is analogous to *Tharp*. Commonwealth's Brief at 8-9. The Commonwealth argues that the trial court was not required to grant Appellant's motion for judgment of acquittal, and instead "had the discretion to afford the parties equal opportunity to respond to its concerns." *Id.* at 9-10. The Commonwealth contends that it presented circumstantial evidence to support the charges involving the non-testifying complainants and that, as in *Tharp*, the trial court was not precluded from reopening the record simply because it agreed with Appellant that the Commonwealth presented insufficient evidence. *Id.* at 9.

Our Supreme Court has held that "a trial court has the discretion to reopen a case for either side, prior to the entry of final judgment, in order to prevent a failure or miscarriage of justice." *Tharp*, 575 A.2d at 558-59. Absent an abuse of discretion, we will not disturb the trial court's ruling. ***Commonwealth v. Baldwin***, 58 A.3d 754, 763 (Pa. 2012). "[A]n abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will, as shown by the evidence or the record, discretion is abused." ***Commonwealth v. Safka***, 141 A.3d 1239, 1249 (Pa. 2016) (citation omitted). Further, "[w]e will not condemn a trial court's ruling as an abuse of discretion merely because we

might have reached a different conclusion." ***Commonwealth v. Bango***, 742 A.2d 1070, 1072 (Pa. 1999) (citation omitted).

In ***Tharp***, the defendant was charged with corruption of minors, which required proof that he was over eighteen at the time of the offense. ***Tharp***, 575 A.2d at 557. After the Commonwealth rested without presenting direct evidence of the defendant's age, the defendant demurred.[6] ***Id.*** at 558. Rather than ruling on the defendant's motion, the trial court permitted the Commonwealth to reopen its case to offer direct evidence of the defendant's age. ***Id.*** On appeal, the defendant argued that the trial court erred by failing to grant the demurrer and by permitting the Commonwealth to introduce additional evidence. ***Id.*** Ultimately, our Supreme Court rejected the defendant's argument, holding that it was a proper exercise of a trial court's discretion "to permit the Commonwealth to reopen its case for the purpose of meeting a demurrer [*i.e.*, motion for judgment of acquittal,] interposed by the defense prior to its ruling upon that motion." ***Id.*** at 559.

Here, in its Rule 1925(a) opinion, the trial court rejected Appellant's claim, reiterating that it had discretion to grant the Commonwealth's motion

---

[6] We note that pursuant to Pa.R.Crim.P. 606, the term "demurrer" for challenges to the sufficiency of the evidence is now referred to as a motion for judgment of acquittal. ***See*** Pa.R.Crim.P. 606 (A)(1) and Comment; ***see also Commonwealth v. Feathers***, 660 A.2d 90, 92 (Pa. Super. 1995) (observing that Rule 606, then numbered Rule 1124, "eliminated the use of the terms 'demurrer' and 'motion in arrest of judgment' and substituted a 'motion for judgment of acquittal'").

to reopen the record. Trial Ct. Op., 8/2/19, at 7. Based on our review of the record, we agree.

After Appellant moved for a judgment of acquittal, the Commonwealth offered to call the two available complainants, S.T. and Trey Gieg, who were already present in court.[7] As in *Tharp*, the trial court had discretion to permit "the introduction of direct evidence to avoid the possibility of a result inconsistent with the true facts." *See Tharp*, 575 A.2d at 559.[8] Under these circumstances, we cannot conclude that the trial court's decision to reopen the record was manifestly unreasonable, a misapplication of the law, or the result of partiality, prejudice, bias or ill will. *See Baldwin*, 58 A.3d at 763; *see also Safka*, 141 A.3d at 1249. Therefore, we discern no abuse of discretion. *See Tharp*, 575 A.2d at 558-59. Accordingly, Appellant is not entitled to relief on this claim.

## Mistrial for *Brady* Violation

In his second issue, Appellant argues that the trial court erred by denying his motion for a mistrial after the Commonwealth "failed to disclose

_____

[7] We reject Appellant's claim that the trial court "made the motion for the Commonwealth" by asking if it wished to reopen the record.

[8] To the extent Appellant attempts to distinguish *Tharp* based on the fact that the Commonwealth did not present circumstantial evidence before moving to reopen the record, his claim is without merit. As noted previously, trial courts have discretion to reopen the record "in order to prevent a failure or miscarriage of justice." *Tharp*, 575 A.2d at 559. Therefore, we reject Appellant's assertion that the trial court was precluded from reopening the record based on the lack of circumstantial evidence or the "subjective" nature of the element in question.

- 12 -

material, exculpatory evidence in violation of [***Brady***].ˮ  Appellant's Brief at 28.  Specifically, Appellant refers to information that B.B. was in a drug rehabilitation facility at the time of trial.  ***Id.***

In support of his ***Brady*** claim, Appellant first argues that the evidence was favorable to his defense.  ***Id.***  Specifically, he asserts that he could have used the information to bolster his self-defense claim, which was based, in part, on Appellant's own assertion that the complaining witnesses were using drugs when he approached their vehicle.  ***Id.***  He further contends that the fact of B.B.'s drug rehabilitation "could have been used to impeach the remaining four witnesses, who testified that "they were not [using] illegal substances in the vehicle.ˮ  ***Id.*** at 30.

Second, Appellant asserts that "the Commonwealth, at the very least, inadvertently suppressed B.B.'s whereabouts and the testimony he could provide.ˮ  ***Id.*** at 29.  Appellant claims that the Commonwealth failed to abide by the trial court's discovery order and "utterly failed to discloseˮ that B.B. "had not appeared for trial until halfway through the jury trial.ˮ  ***Id.***

Third, Appellant contends that "the eleventh hour reveal by the Commonwealth that B.B. was located in a drug rehabilitation facility significantly prejudiced [Appellant's] self-defense claim.ˮ  ***Id.*** at 30.  He argues that, had this information been disclosed prior to trial, Appellant "would have been able to impeach the credibility of the [complainants] and/or bolster

his self-defense claim by demonstrating to the jury that the [complainants] were, in fact, partaking in drug use." *Id.* at 31.

The Commonwealth responds that Appellant failed to establish a *Brady* violation, as he did not demonstrate that the information relating to B.B.'s whereabouts would have been favorable to his defense. Commonwealth's Brief at 13. Additionally, the Commonwealth argues that there was no evidence that the Commonwealth suppressed the information concerning B.B.'s rehabilitation or that it otherwise denied Appellant access to B.B. *Id.* Finally, the Commonwealth asserts that Appellant failed to prove that B.B.'s testimony was material and, therefore, he cannot satisfy the prejudice prong of *Brady*. *Id.* at 12-13.

We review a trial court's denial of a motion for mistrial for an abuse of discretion. *Commonwealth v. Bryant*, 67 A.3d 716, 728 (Pa. 2013). A mistrial is appropriate "only where the incident upon which the motion is based is of such a nature that its unavoidable effect is to deprive the defendant of a fair trial by preventing the jury from weighing and rendering a true verdict." *Id.* (citation and internal quotation marks omitted).

*Brady* provides that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S. at 87; *see also* Pa.R.Crim.P. 573(B)(1)(a) (providing that the prosecutor must disclose any evidence within

- 14 -

the prosecutor's possession or control that is favorable to the defendant and is material to defendant's guilt or to punishment).

To establish a **Brady** violation, an appellant must prove three elements: "(1) the evidence at issue is favorable to the accused, either because it is exculpatory or because it impeaches; (2) the evidence was suppressed by the prosecution, either willfully or inadvertently; and (3) prejudice ensued." **Commonwealth v. Weiss**, 81 A.3d 767, 783 (Pa. 2013) (citations omitted).

"Exculpatory evidence is that which extrinsically tends to establish defendant's innocence of the crimes charged." **Commonwealth v. Lambert**, 765 A.2d 306, 325 n.15 (Pa. Super. 2000) (citation omitted). "**Brady** does not require the disclosure of information that is not exculpatory but might merely form the groundwork for possible arguments or defenses." **Commonwealth v. Roney**, 79 A.3d 595, 608 (Pa. 2013) (citation and internal quotation omitted). Further, "[t]he burden rests with the appellant to prove, by reference to the record, that evidence was withheld or suppressed by the prosecution." **Id.** at 607 (citation and internal quotation omitted).

In order to demonstrate prejudice, "the evidence suppressed must have been material to guilt or punishment." **Commonwealth v. Gibson**, 951 A.2d 1110, 1126 (Pa. 2008) (citations omitted). Evidence is material under **Brady** when there is a reasonable probability that, had the evidence been disclosed, the result of the trial would have been different. **Id.** at 1127 (citations omitted). "The mere possibility that an item of undisclosed information might

have helped the defense, or might have affected the outcome of the trial does not establish materiality in the constitutional sense." ***Commonwealth v. McGill***, 832 A.2d 1014, 1019 (Pa. 2003) (citation omitted).

Here, in its Rule 1925(a) opinion, the trial court reiterated that Appellant "fell woefully short of meeting [the ***Brady***] standard. Other than baldly asserting a violation[, Appellant] failed to adequately develop [his] argument." Trial Ct. Op., 8/2/19, at 7. Based on our review of the record, we agree.

As noted by the trial court, B.B.'s subsequent drug rehabilitation had no bearing on the facts of Appellant's case. ***See*** N.T. Trial at 132-33. Therefore, Appellant cannot establish that the evidence was favorable to his defense. ***See Weiss***, 81 A.3d at 783; ***see also Roney***, 79 A.3d at 608. Further, Appellant did not prove that the Commonwealth was aware of B.B.'s placement in rehabilitation and failed to disclose it. ***See Roney***, 79 A.3d at 607. Finally, evidence relating to B.B.'s drug rehabilitation was not material, as it would not have affected the outcome of trial. ***See Gibson***, 951 A.2d at 1127; ***see also McGill***, 832 A.2d at 1019. Therefore, because Appellant failed to establish the underlying ***Brady*** claim, the trial court did not abuse its discretion in denying Appellant's motion for a mistrial on that basis. ***See Bryant***, 67 A.3d at 728. Accordingly, Appellant is not entitled to relief on this issue.

**Missing Witness Jury Instruction**

- 16 -

Lastly, Appellant argues that the trial court erred by denying his request for a missing witness jury instruction. Appellant's Brief at 32. In support, Appellant asserts that B.B. was available to the Commonwealth, as the Commonwealth "knew of B.B.'s whereabouts and were merely negligent in retrieving him." *Id.* at 35. Further, Appellant asserts that B.B. was unavailable to the defense, as "B.B. was lodged in a drug rehabilitation facility and the Commonwealth had not provided this information nor any contact information to the defense." *Id.* at 34. With respect to the substance of B.B.'s testimony, Appellant asserts that B.B. "would have not only testified about his struggles with drug use and corroborated that portion of [Appellant's] testimony, but [his] testimony would have aided in impeaching the other witnesses, and [he] would have potentially testified as to the incident itself from his perspective." *Id.* Finally, Appellant asserts that "none of the six instances [in *Commonwealth v. Miller*, 172 A.3d 632, 645-46 (Pa. Super. 2017)] apply to [Appellant's] case."[9] *Id.* at 36. Therefore, Appellant argues that he was entitled to a missing witness instruction with respect to B.B. *Id.*

The Commonwealth responds that B.B. "was not available to the Commonwealth" and was instead "equally unavailable to both parties." Commonwealth's Brief at 19. Further, the Commonwealth argues that "there is no reason to believe that testimony from B.B. would have been anything

---

[9] In his brief, Appellant addresses the six exceptions that preclude a defendant from obtaining a missing witness instruction. *See* Appellant's Brief at 33-35. However, because we agree with the trial court that Appellant failed to meet the threshold requirements for a missing witness instruction, we decline to address the applicability of the exceptions.

other than cumulative of the other eyewitness testimony." *Id.* The Commonwealth asserts that "[i]f anything, [B.B.'s] testimony was more likely to have provided further evidence of [Appellant's] guilt." *Id.* Therefore, the Commonwealth contends that the trial court properly denied Appellant's request for a missing witness instruction. *Id.* at 20.

When reviewing a challenge to jury instructions, this Court will "reverse a [trial] court's decision only when it abused its discretion or committed an error of law." *Commonwealth v. Galvin*, 985 A.2d 783, 799 (Pa. Super. 2009) (citation omitted). When a trial court refuses to deliver a specific jury instruction, "it is the function of this Court to determine whether the record supports the trial court's decision." *Commonwealth v. Buterbaugh*, 91 A.3d 1247, 1257 (Pa. Super. 2014) (*en banc*) (citation omitted). "[T]he relevant inquiry for this Court . . . is whether such charge was warranted by the evidence in the case." *Commonwealth v. Baker*, 963 A.2d 495, 506 (Pa. Super. 2008) (citations and internal quotation omitted).

With respect to the missing witness instruction, we have explained:

A missing witness instruction may be given in limited circumstances. When a potential witness is available to only one of the parties to a trial, it appears this witness has special information material to the issue, and this person's testimony would not merely be cumulative, then if such party does not produce the testimony of this witness, the jury may draw an inference that [the testimony] would have been unfavorable.

*Miller*, 172 A.3d at 645 (citation and quotation omitted).

In order for the "missing witness" adverse inference rule to be invoked against the Commonwealth, the witness must be available only to the

- 18 -

Commonwealth and no other exceptions must apply. ***Commonwealth v. Culmer***, 604 A.2d 1090, 1098 (Pa. Super. 1992). We have set forth the six exceptions as follows:

> 1. The witness is so hostile or prejudiced against the party expected to call him that there is a small possibility of obtaining unbiased truth;
>
> 2. The testimony of such a witness is comparatively unimportant, cumulative, or inferior to that already presented;
>
> 3. The uncalled witness is equally available to both parties;
>
> 4. There is a satisfactory explanation as to why the party failed to call such a witness;
>
> 5. The witness is not available or not within the control of the party against whom the negative inference is desired; and
>
> 6. The testimony of the uncalled witness is not within the scope of the natural interest of the party failing to produce him.

***Miller***, 172 A.3d at 645-46.

Here, in denying Appellant's request for a missing evidence instruction, the trial court explained:

> First of all, [B.B.] was not available to the Commonwealth only. Second, he does not have special information material to the issue at hand. Other than [Appellant's] thought that he does. And his testimony that [Appellant] pointed the gun at everyone in the car would be cumulative. Four or five people already testif[ied] that that happened. That's about as cumulative as it gets.

N.T. Trial at 133-34.

Based on our review of the record, we agree with the trial court that Appellant failed to establish the threshold requirements for a missing witness jury instruction. **See Miller**, 172 A.3d at 645. Further, we discern no error of law or abuse of discretion by the trial court. **See Galvin**, 985 A.2d at 799. Therefore, we affirm on the basis of the trial court's ruling. **See** N.T. Trial at 132-34.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/8/2020